No. 23-2134

IN THE

# United States Court of Appeals for the Federal Circuit

CLEARPLAY, INC.,

*Plaintiff-Appellant*,

*v.*

DISH NETWORK L.L.C.; ECHOSTAR TECHNOLOGIES LLC,

*Defendants-Appellees*.

On Appeal from the United States District Court
for the District of Utah
No. 2:14-cv-00191-DN, Hon. David Nuffer

## NON-CONFIDENTIAL RESPONSE BRIEF OF APPELLEES DISH NETWORK L.L.C. AND ECHOSTAR TECHNOLOGIES LLC

G. Hopkins Guy III
BAKER BOTTS LLP
1001 Page Mill Road
Bldg. One, Suite 200
Palo Alto, CA 94304

Brent O. Hatch
HATCH LAW GROUP, PC
22 East 100 South
Salt Lake City, UT 84111

Eric A. Shumsky
Robbie Manhas
ORRICK, HERRINGTON & SUTCLIFFE LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 339-8400

*Additional Counsel Listed on Inside Cover*

Kurt M. Pankratz
BAKER BOTTS LLP
2001 Ross Avenue, Suite 900
Dallas, TX 75201

Ali Dhanani
Charles Stephen Maule
BAKER BOTTS LLP
910 Louisiana Street
Houston, TX 77002

Jamie R. Lynn
Lauren J. Dreyer
BAKER BOTTS LLP
700 K Street, NW
Washington, D.C. 20001

Edmund Hirschfeld
Alexandra Bursak
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019

Lauren A. Weber
ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, WA 98101

*Counsel for Appellees*

## CLAIM LANGUAGE

## U.S. Patent No. 7,577,970

27. In a computerized system for enabling a consumer to filter multimedia content that is comprised of video content, audio content, or both, and wherein a consumer computer system includes a processor, a memory, a decoder, and an output device for playing the multimedia content, a method for assisting the consumer to identify portions of the multimedia content that are to be filtered and to thereafter filter the identified portions, the method comprising:

> accessing a plurality of navigation objects, each defining a start position and a stop position and a specific filtering action to be performed on a portion of the multimedia content;
>
> providing for disabling of one or more of the navigation objects such that the specific filtering action specified by the disabled navigation object is ignored;
>
> updating a position code in association with decoding the multimedia content on the consumer computer system;
>
> comparing the position code with the navigation objects to determine whether the position code corresponding to the multimedia content falls within the start and stop position defined by one of the navigation objects;
>
> activating the filtering action assigned to the corresponding navigation object in order to filter the portion of the multimedia content defined by the corresponding navigation object; and
>
> playing the multimedia content at the output device excluding the portion thereof which is filtered in accordance with the corresponding navigation object and ignoring the filtering action specified by any disabled navigation objects.

28. A method as recited in claim 27 wherein the filtering action is skipping the portion of the multimedia content defined by the particular navigation object.

33. A method as recited in claim 28 wherein skipping further comprises:

> terminating the decoding of the multimedia content at the start position of the particular navigation object;
>
> advancing to the stop position of the particular navigation object; and
>
> resuming the decoding of the multimedia content at the stop position of the particular navigation object.

**U.S. Patent No. 6,898,799**[1]

12. In a computerized system for enabling a consumer to digitally filter multimedia content that is comprised of video content, audio content, or both, and wherein a consumer computer system includes a processor, a memory, a decoder, and an output device for playing the multimedia content, a method for assisting the consumer to automatically identify portions of the multimedia content that are to be filtered and to thereafter automatically filter the identified portions, the method comprising the acts of:

> creating an object store which can be loaded into a memory of the consumer computer system, the object store including a plurality of navigation objects, each of which defines a portion of the multimedia content that is to be filtered by defining a start position and a stop position and a specific filtering action to be performed on the portion of the multimedia content defined by the start and stop positions for that portion;
>
> decoding the multimedia content on the consumer computer system and as the multimedia content is output from a decoder of the consumer computer system, continuously updating a position code;
>
> as the multimedia content is decoding, continuously monitoring the position code to determine whether the position code of the

[1] Changed via Certificate of Correction. Appx375.

multimedia content falls ~~is~~ within the ~~star~~[start] and stop positions defined by one of the navigation objects;

when the position code is determined to fall within the ~~star~~[start] and stop positions defined by a particular navigation object, activating the filtering action assigned to the particular navigation object in order to filter the portion of the multimedia content defined by the particular navigation object;

transferring the multimedia content to an output device, whereby the multimedia content is played at the output device excluding each portion thereof which is filtered in accordance with the plurality of navigation objects;

assigning a configuration identifier to the decoder;

comparing the configuration identifier of the particular navigation object with the configuration identifier of the decoder to determine if the particular navigation object applies to the decoder; and

determining that the particular navigation object applies to the decoder based on the configuration identifier of the particular navigation object matching the configuration identifier of the decoder.

FORM 9. Certificate of Interest

Form 9 (p. 1)
March 2023

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 23-2134

**Short Case Caption** Clearplay, Inc. v. DISH Network L.L.C.

**Filing Party/Entity** DISH Network L.L.C.; EchoStar Technologies LLC

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 10/07/2024

Signature: /s/ Eric A. Shumsky

Name: Eric A. Shumsky

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| DISH Network L.L.C. | | DISH DBS Corporation, DISH Orbital Corporation, DISH Network Corporation, Echostar Corporation |
| EchoStar Technologies LLC (n/k/a DISH Technologies L.L.C.) | | DISH Technologies Holding Corporation, DISH Network L.L.C., DISH DBS Corporation, DISH Orbital Corporation, DISH Network Corporation, Echostar Corporation |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☑ Additional pages attached

| | | |
|---|---|---|
| See Attached | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below) ☐ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

## Attachment

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

Orrick, Herrington & Sutcliffe LLP: Alyssa M. Caridis; Alex V. Chachkes; Briggs M. Wright; Frances S. Cheever; I. Neel Chatterjee

Baker Botts L.L.P.: Robert L. Maier; Bethany Salpietra; Eric Faragi; Thomas B. Carter, Jr.

Hatch Law Group, PC: Dillon P. Olson; Lara A. Swensen; Shaunda McNeill; Tyler V. Snow

# TABLE OF CONTENTS

Page

CLAIM LANGUAGE ..... i

CERTIFICATE OF INTEREST ..... iv

TABLE OF AUTHORITIES ..... xi

STATEMENT OF RELATED CASES ..... xvi

INTRODUCTION ..... 1

STATEMENT OF THE ISSUES ..... 3

STATEMENT OF THE CASE ..... 4

In the 2000s, ClearPlay obtains niche patents in the established field of content-filtering. ..... 4

The patents claim narrow methods using "navigation objects." ..... 6

DISH develops the AutoHop commercial-skipping technology. ..... 10

ClearPlay asserts its patents against AutoHop, losing claims in IPRs in the meantime. ..... 13

Following claim construction, the district court grants DISH partial summary judgment of non-infringement. ..... 15

Following the jury verdict, the district court grants JMOL of non-infringement. ..... 21

SUMMARY OF ARGUMENT ..... 24

ARGUMENT ..... 28

I. The District Court Correctly Granted JMOL That DISH Does Not Infringe The '970 Patent. ..... 28

A. Post-trial, the district court applied the same construction of "providing for disabling" on which it instructed the jury. ..... 29

1. The claim construction was correct. ..... 29

2. The court did not modify its claim construction after trial. ..... 32

B. There is no substantial evidence that AutoHop meets the "providing for disabling" limitation. .......... 35

1. Choosing "No Thanks" does not directly disable segment bookmarks. .......... 36

2. Fast-forwarding and rewinding do not directly disable segment bookmarks. .......... 42

C. The district court did not usurp the jury's role. .......... 46

II. The District Court Correctly Granted JMOL That DISH Does Not Infringe The '799 Patent. .......... 51

A. The district court correctly construed claim 12 to prohibit sharing under the single-object approach. .......... 52

B. The district court correctly determined that there is no substantial evidence of infringement under the correct construction. .......... 63

1. The district court had the obligation to apply the proper construction. .......... 63

2. Under the single-object construction, there can be no infringement. .......... 65

C. The district court applied the same construction at JMOL on which it instructed the jury. .......... 73

III. Alternatively, This Court Should Affirm JMOL On The '799 Patent Because The Accused Navigation Object Undisputedly Is Deleted Before The Method Completes. .......... 76

A. The same navigation object must exist across the method's steps. .......... 76

B. The accused announcement file undisputedly is deleted before the method completes. .......... 78

CONCLUSION .......... 81

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF CONFIDENTIAL MATERIAL

**CONFIDENTIAL MATERIAL OMITTED**

The material redacted from pages 37 and 43-45 of this brief contains DISH Network source code.

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Am. Bus Ass'n v. Slater*,
231 F.3d 1 (D.C. Cir. 2000) ... 55

*Amgen v. Sandoz*,
923 F.3d 1023 (Fed. Cir. 2019) ... 39

*Augme Techs. v. Yahoo!*,
755 F.3d 1326 (Fed. Cir. 2014) ... 71

*Barrday v. Lincoln Fabrics*,
2023 WL 7871688 (Fed. Cir. Nov. 16, 2023) ... 56

*Bio-Rad Lab'ys v. 10X Genomics*,
967 F.3d 1353 (Fed. Cir. 2020) ... 71, 72

*Boyle v. United Techs.*,
487 U.S. 500 (1988) ... 47

*Cordis Corp. v. Boston Sci.*,
658 F.3d 1347 (Fed. Cir. 2011) ... 33

*Dominion Energy v. Alstom Grid*,
725 F. App'x 980 (Fed. Cir. 2018) ... 45

*Duncan Parking Techs. v. IPS Grp.*,
914 F.3d 1347 (Fed. Cir. 2019) ... 70

*Ecolab v. Paraclipse*,
285 F.3d 1362 (Fed. Cir. 2002) ... 56

*Fantasy Sports Props. v. Sportsline.com*,
287 F.3d 1108 (Fed. Cir. 2002) ... 48

*Felix v. Am. Honda Motor*,
562 F.3d 1167 (Fed. Cir. 2009) ... 73

*Festo v. Shoketsu Kinzoku Kogyo Kabushiki*,
344 F.3d 1359 (Fed. Cir. 2003) .......... 73

*Finisar v. DirecTV Grp.*,
523 F.3d 1323 (Fed. Cir. 2008) .......... 64

*Finjan v. SonicWall*,
84 F.4th 963 (Fed. Cir. 2023) .......... 33

*First Safe Deposit Nat'l Bank v. W. Union Tel.*,
337 F.2d 743 (1st Cir. 1964) .......... 49

*Freedman Seating v. Am. Seating*,
420 F.3d 1350 (Fed. Cir. 2005) .......... 71

*Genentech v. Amgen*,
289 F.3d 761 (Fed. Cir. 2002) .......... 56

*Glaxo v. TorPharm*,
153 F.3d 1366 (Fed. Cir. 1998) .......... 73

*Homeland Housewares v. Whirlpool*,
865 F.3d 1372 (Fed. Cir. 2017) .......... 81

*Honeywell Int'l v. Hamilton Sundstrand*,
370 F.3d 1131 (Fed. Cir. 2004) .......... 72

*Howmedica Osteonics v. Zimmer, Inc.*,
822 F.3d 1312 (Fed. Cir. 2016) .......... 80

*InterDigital Commc'ns v. ITC*,
601 F. App'x 972 (Fed. Cir. 2015) .......... 80

*Laitram v. NEC*,
115 F.3d 947 (Fed. Cir. 1997) .......... 24

*LaserDynamics v. Quanta Comput.*,
694 F.3d 51 (Fed. Cir. 2012) .......... 64

*Mformation Techs. v. Rsch. in Motion*,
764 F.3d 1392 (Fed. Cir. 2014) .......... 32, 39

*Miller v. Kenworth of Dothan*,
277 F.3d 1269 (11th Cir. 2002) ........ 49

*Nichols Constr. v. Cessna Aircraft*,
808 F.2d 340 (5th Cir. 1985) ........ 49

*O2 Micro Int'l v. Beyond Innovation Tech.*,
521 F.3d 1351 (Fed. Cir. 2008) ........ 63

*Otte v. United States*,
419 U.S. 43 (1974) ........ 78

*Otten v. BNSF Ry.*,
2023 WL 1948626 (10th Cir. Feb. 13, 2023) ........ 64

*ParkerVision v. Qualcomm*,
627 F. App'x 921 (Fed. Cir. 2015) ........ 67

*Peguero-Moronta v. Santiago*,
464 F.3d 29 (1st Cir. 2006) ........ 50

*Perez-Zenteno v. U.S. Att'y Gen.*,
913 F.3d 1301 (11th Cir. 2019) ........ 54

*Plastic Omnium Advanced Innovation & Rsch. v. Donghee Am.*,
943 F.3d 929 (Fed. Cir. 2019) ........ 48, 69

*Read Corp. v. Powerscreen of Am.*,
44 F. App'x 502 (Fed. Cir. 2002) ........ 69

*Rodriguez v. Dep't of Veterans Affairs*,
8 F.4th 1290 (Fed. Cir. 2021) ........ 30, 50

*SciMed Life Sys. v. Advanced Cardiovascular Sys.*,
242 F.3d 1337 (Fed. Cir. 2001) ........ 70

*Simpleair v. Sony Ericsson Mobile Commc'ns*,
820 F.3d 419 (Fed. Cir. 2016) ........ 64

*Smith & Nephew v. Arthrex*,
603 F. App'x 981 (Fed. Cir. 2015) ........ 24

*Stroup v. United Airlines*,
26 F.4th 1147 (10th Cir. 2022) .......... 49

*Tex. Instruments v. Cypress Semiconductor*,
90 F.3d 1558 (Fed. Cir. 1996) .......... 67, 68, 69

*TiVo v. EchoStar Commc'ns*,
516 F.3d 1290 (Fed. Cir. 2008) .......... 47

*Tuna Processors v. Haw. Int'l Seafood*,
327 F. App'x 204 (Fed. Cir. 2009) .......... 77, 78

*United States v. Williams*,
898 F.3d 1052 (10th Cir. 2018) .......... 42

*Univ. of Mass. v. L'Oréal*,
36 F.4th 1374 (Fed. Cir. 2022) .......... 59

*VLSI Tech. v. Intel*,
87 F.4th 1332 (Fed. Cir. 2023) .......... 68

*Vocalife v. Amazon.com*,
2022 WL 2986786 (Fed. Cir. July 28, 2022) .......... 45

*WARF v. Apple*,
905 F.3d 1341 (Fed. Cir. 2018) .......... 54, 55, 77

*Weisgram v. Marley*,
528 U.S. 440 (2000) .......... 47

*Wi-Lan USA v. Apple*,
830 F.3d 1374 (Fed. Cir. 2016) .......... 81

*Yoon Ja Kim v. ConAgra Foods*,
465 F.3d 1312 (Fed. Cir. 2006) .......... 40, 45

**Constitutional Provisions**

U.S. Const. amend. VII .......... 3, 25, 28, 46, 47

**Rules and Regulations**

Fed. R. Civ. P. 50 .......... 2, 3, 47

Fed. R. Civ. P. 50(a) .......... 49, 53, 73

Fed. R. Civ. P. 50(b) .......... 24, 49, 73

Fed. R. Civ. P. 52 .......... 24

Fed. R. Civ. P. 59 .......... 24

**Other Authorities**

Concise Oxford English Dictionary (12th ed. 2011) .......... 57

The Merriam-Webster Dictionary (2022) .......... 31, 56

Webster's Third New International Dictionary (1966) .......... 54, 56

## STATEMENT OF RELATED CASES

No appeal from the same proceedings was previously before this Court or any other appellate court.

Counsel is not aware of any case pending in this or any other court or agency that will directly affect or be directly affected by this Court's decision in the pending appeal.

## INTRODUCTION

ClearPlay had what sounds at first like a nifty idea, if not for one big problem. The idea? Filter naughty bits from media content to make it family-friendly. The problem? Filtering content—whether by covering your kids' eyes, or, with the advent of VCRs, fast-forwarding through it—is as old as creating content. By the 1990s, companies even had automated that process.

Thus, when ClearPlay entered that crowded field in the 2000s, it needed to evade abundant prior art. It had numerous patent claims canceled and had to narrow others. The surviving asserted claims reflect two slivers of supposed invention, both requiring specific uses of a "navigation object," a structure that identifies content to filter and how to filter it. Sliver #1: selectively *disable* navigation objects to *prevent* filtering from occurring. Sliver #2: add a "configuration identifier" to the navigation object to ensure its compatibility with the playback device.

ClearPlay therefore faced a dilemma when it sued over DISH's commercial-skipping technology, AutoHop. (Notably, ClearPlay did not accuse DISH's parental-control features.) Given the narrowness of its

claims, ClearPlay would be asking a jury to award it massive damages for one patent that would *prevent* DISH's commercial-skipping technology from working, and another whose supposed point of novelty was merely ensuring compatibility between software and hardware. ClearPlay's solution: "broaden its patent claims beyond their scope." Appx59. But over the course of summary judgment, supplemental claim construction, in limine rulings, and jury instructions, the district court held fast to constructions that limited ClearPlay's claims to their narrow terms.

At trial, ClearPlay again ignored the limits of its claims. So when the jury awarded ClearPlay some $469 million in damages for its slivers of invention, the district court properly followed Rule 50's process for testing the sufficiency of the evidence. Based on the governing constructions and the intrinsic evidence, and an exhaustive review of the record, the court properly concluded that AutoHop functions differently from ClearPlay's asserted claims. So, for the first time in its 28-year tenure, the court granted JMOL despite a jury verdict. Appx20809.

This represented an exercise of great diligence in the face of ClearPlay's years-long recalcitrance—what the court properly termed ClearPlay's "alternate reality of claim construction." Appx87. Throughout the case—at summary judgment; at *Daubert*; in addressing motions in limine; at the final pretrial conference; in jury instructions; and at Rule 50—ClearPlay "misread[] and contort[ed] pretrial orders and directives regarding claim construction." Appx86-87. Thus, the court's issuance of JMOL does not remotely implicate the Seventh Amendment; rather, it is the natural result of "ClearPlay's insist[ence] on … eliciting testimony at trial which contradicted the claim construction and prior orders." Appx88. The court got the relevant constructions right, and applying those—not ClearPlay's "alternate reality"—the judgment should be affirmed.

## STATEMENT OF THE ISSUES

1. Whether the district court correctly concluded that ClearPlay failed to provide substantial evidence that DISH infringes U.S. Patent No. 7,577,970's "providing for disabling" claim term.

2. Whether the district court correctly concluded that ClearPlay failed to provide substantial evidence that DISH infringes U.S. Patent No. 6,898,799's "navigation object" claim term.

3. Whether, in the alternative, DISH is entitled to JMOL of non-infringement as to the '799 patent because a navigation object must continue to exist through the method's completion.

## STATEMENT OF THE CASE

### *In the 2000s, ClearPlay obtains niche patents in the established field of content-filtering.*

ClearPlay, a "parental control company," provides a service for "remov[ing] … unwanted content" from movies and TV shows. Appx18100-18101; Appx18006. At issue here are its '970 and '799 patents, both expired, which broadly relate to "automatically identifying and filtering portions of multimedia content during the decoding process." Appx329 1:18-20.[2]

By the 1990s, content-filtering was commonplace. Appx329-330 1:21-4:30. Because some parents want "an alternative version" of multimedia content without "explicit violence, sexuality, or language,"

[2] We cite the '970 patent because the patents share "nearly identical specifications." Appx7; *see* Appx2839-2860 (redline).

extensive prior art taught how to "manipulat[e] the multimedia source" to offer "multiple versions." Appx329 1:22-23, 1:37, 1:45-2:6. For instance, some prior art taught "discard[ing] or skipp[ing]" "unwanted segments." Appx330 3:30-33; *see* Appx4608, Appx4642-4644, Appx9972-9975 (prior-art patents and applications).

One standout in the field was U.S. Patent No. 6,408,128, issued to inventor Max Abecassis. Appx701-766. As Matthew Jarman—ClearPlay's founder and CEO, and its named inventor—recognized, Abecassis "had the same idea for editing movies back in 1990." Appx18049. Abecassis's patent discloses a method of "automatically customiz[ing] the playing of videos" by using "video maps." Appx729 1:46-49; Appx9969. A video map identifies the beginning and end frames of "scenes in a movie" and assigns each segment a "category code," such as "violence, bloodshed, [or] monsters." Appx9969-9970. Similar to a playlist, the viewer selects which categories to watch, and the relevant segments play in the listed order. Appx9970-9972; *see* Appx731 5:26-30; Appx736 16:19-36; Appx739 21:60-65.

For its part, ClearPlay applied for the '799 patent in October 2000. Appx348. The '970 patent is a continuation. Appx329 1:7-11. During

the original examination, the PTO initially rejected dozens of claims as anticipated or obvious. Appx23089-23096. For example, prior art disclosed "automatically identify[ing] portions" of multimedia content "to be filtered" based on their start and stop positions and "thereafter automatically filter[ing] the identified portions," Appx23089, including by "skipping," Appx23092. After amendment, the PTO ultimately allowed some claims based on their "distinct features" concerning specific methods of filtering via "navigation objects." Appx23298-23303.

***The patents claim narrow methods using "navigation objects."***

**Navigation objects, generally.** "Each navigation object contains" three key parameters: "[1] a start position, [2] a stop position, and [3] a filtering action to be performed on the portion of the multimedia content that is defined by the start position and stop position." Appx330 4:49-52. Filtering actions are types of edits—such as skipping, muting, or cropping. Appx331 5:1-52.

Figure 3A illustrates these three parameters. Navigation object 320a requires filtering to begin at start position 321a (30 minutes, 10 seconds, and 15 milliseconds in), and continue through stop position

323a (30 minutes, 15 seconds), using filtering action 325a (skipping over that portion, a "scene of bloodshed").




Appx5565; Appx320 (original).

A navigation object may also include a "configuration identifier." Appx334 12:2-4. Because "different consumer systems may introduce variations in how navigation objects are processed," the configuration identifier checks that the user's system is compatible with the navigation object. Appx335 14:6-17. As shown in Figure 3A, navigation object 320a includes configuration identifier 329a. Appx334 11:63-66, 12:5-8.

Navigation objects come in sets. Appx334 11:55-56 (describing "plurality" of navigation objects). For instance, a viewer who wishes to watch Forrest Gump without swearing and nudity can enable multiple navigation objects that collectively eliminate them from the film. But to

see the Vietnam War scenes, the viewer may disable navigation objects related to violence so that those navigation objects' filtering actions are not activated. Appx336-338 16:64-19:2. Once the viewer has selected (or disabled) navigation objects, the viewer's choices are executed during the decoding process, which converts encoded media into the format seen on an output device like a TV. Appx329 2:12-15; Appx330 4:41-44.

**'970 patent, asserted claims 28 and 33.** These "disabling claims," which depend from unasserted independent claim 27, cover one narrow aspect of content-filtering. Rather than a technique for filtering content out, they claim methods of *allowing* portions of media to be viewed by selectively *dis*abling navigation objects (as in the Forrest Gump example above). Once a navigation object is disabled, its filtering action is ignored during playback. Claims 28 and 33 both recite "skipping" as the filtering action. Appx340 23:59-61, 24:9.

The non-infringement dispute for these claims centered on claim 27, which recites "a method for assisting the consumer to identify portions of the multimedia content … to be filtered and to thereafter filter the identified portions." Appx340 23:33-36. Tracking this

"thereafter" language, the claim sets forth sequential steps. *See* Appx60-62. Two are relevant here. First, claim 27 requires the system to "provid[e] for disabling of one or more of the navigation objects such that the specific filtering action specified by the disabled navigation object is ignored." Appx340 23:41-43. That is, the system must provide a way to turn off some navigation objects (e.g., those for violence), while leaving on others (e.g., those for swearing), so that only the latter govern filtering during playback. Then the system must "play[]" the media content while "excluding the portion[s]" captured in enabled navigation objects and "ignoring the filtering action specified by any disabled navigation objects." Appx340 23:54-58.

**'799 patent, asserted claim 12.** This "configuration identifier" claim covers a filtering method that requires each "particular navigation object" to have both a specific filtering action and a configuration identifier. Appx372 22:10-12, 22:18-21.

The claim recites "creating an object store" that "includ[es] a plurality of navigation objects." Appx372 21:58-60. Subsequent steps recite decoding media and determining when the position code of the media falls within "a particular navigation object," which triggers "the

filtering action assigned to the particular navigation object." Appx372 21:49-22:16. To ensure that navigation objects apply only for compatible decoders, the method requires "assigning a configuration identifier to the decoder"; "comparing" the configuration identifiers of the decoder and *each* navigation object; and determining whether "the particular navigation object applies" based on whether those configuration identifiers match. Appx372 22:17-25.

***DISH develops the AutoHop commercial-skipping technology*.**

DISH is a nationwide provider of TV and related services. One of DISH's offerings is the Hopper set-top box, which lets viewers "hop" from room to room while viewing a program. Appx23787. The Hopper is a digital video recorder that converts satellite signals to TV-compatible signals, provides TV-guide information, and stores recorded shows.

In 2012, DISH launched the AutoHop feature, allowing users to skip commercials in recordings of certain primetime TV shows. Appx18243; Appx18328-18330. Users enable AutoHop by pressing "Yes" at an initial screen:




Appx17350. Once AutoHop is enabled, it skips all commercials in that program. Appx18262-18263; Appx18344. But, because AutoHop is turned off by default, users must reselect it for every program they want to watch without commercials. Appx18343.

Skipping commercials is no easy task. Commercials during a given show run for different durations, and at slightly different times, in each regional market. Appx18326-18327. Thus, neither the show segments nor the commercials play in perfect sync across markets. DISH solved that problem by focusing on the show segments a user will watch rather than the commercials they will skip. Appx18254. Managing AutoHop begins when a DISH operator watching live

primetime programming marks the beginning and end of each segment of a show. Appx18331. DISH's technology then parses the closed-captioning data in each segment to find a unique word or phrase, then determines how far offset that closed-captioning "anchor" is from the segment's start and end. Appx18331-18332. DISH then processes the closed-captioning data in several stages, two of which are key here:

**Announcement File.** The closed-captioning data is packaged into a type of "announcement file" called "Show Metadata," which is identified by the descriptor "0x08." Appx18250-18251; Appx18348-18354. The file contains anchor words or phrases from closed-captioning data, and measurements of how offset these anchors are from the start and end positions of a show segment. Appx18332-18333. The announcement file is then transferred via satellite to each subscriber's set-top box. Appx18349-18350; Appx18354.

**Segment-Bookmark File.** Each Hopper uses the announcement file's data, and its corresponding recorded TV show, in a "segment-bookmark file," which contains "segment bookmarks." Appx18271; Appx18354-18356; Appx18363-18367. Each bookmark contains a "presentation timestamp" reflecting where in its video stream a show

segment's start or end positions occur. Appx18271-18276; Appx18357-18358. Each show segment accordingly gets a pair of bookmarks, one start and one stop. Appx18359; Appx18363.

The segment bookmarks identify segments to play to the viewer. Shows appear commercial-free (even though commercials are still recorded with the show) because the set-top box plays only the identified segments from the segment-bookmark file, "like a playlist." Appx18367; *see* Appx18369. There is no need for a "skip command" in the "announcement file or the segment bookmark file" because the AutoHop source code, and *only* the AutoHop source code, is pre-programmed on how to process the bookmarks. Appx18270-18271; *see* Appx18367-18369.

***ClearPlay asserts its patents against AutoHop, losing claims in IPRs in the meantime.***

In 2014, ClearPlay filed this lawsuit. Appx381-398. As the case progressed, the number of valid patents and claims dwindled, among other reasons because Abecassis's company filed IPRs against multiple ClearPlay patents. *See* Appx4146-4169; Appx9959-9991; Appx9993-10023; Appx10911-10924. In each IPR, the primary prior-art reference was Abecassis's '128 patent. Appx4147; Appx9960; Appx9994;

Appx10912. The PTO ultimately cancelled over 60 claims across various patents. Appx4168; Appx9991; Appx10022.

At the heart of the surviving claims were ClearPlay's navigation objects, which were central to its attempts to distinguish the prior art. Abecassis's patent also enables a viewer to filter undesirable content. Appx745 33:48-61. But ClearPlay distinguished Abecassis's patent on the theory that ClearPlay's patents accomplish filtering in a different way: via a navigation object, a "structure" that must: (1) "include" start and stop positions for a portion of multimedia content, plus a specific filtering action for that portion of content, Appx3694-3698; Appx10592; Appx10622-10623; and (2) be independent of other navigation objects, Appx13842.[3] By contrast, ClearPlay asserted that Abecassis's patent's video map "tells the sequence that should be played," yielding an "end result" of "skipping" undesirable content, but without a structure akin to a navigation object, because the map lacks a filtering action for each object. Appx3694-3695.

[3] ClearPlay also distinguished prior-art references that used multiple "discrete objects" for skipping. *E.g.*, Appx3798.

The PTO agreed, finding that Abecassis's video map was not a navigation object because it does not have any "specific filtering action." Appx9970-9971; Appx10004-10005; Appx10622-10624. Although the PTO determined that the claimed "navigation object" itself would have been obvious, Appx10018, the PTO ultimately upheld claim 27 of the '970 patent because the prior art did not teach disabling a navigation object and *then* ignoring its filtering action. Appx10922-10923. And the PTO upheld the claim of a different ClearPlay patent because the prior art did not teach a configuration identifier "as part of a navigation object." Appx11314.

***Following claim construction, the district court grants DISH partial summary judgment of non-infringement.***

After the IPRs, a central claim-construction dispute was whether each navigation object must contain its own distinct elements, including a specific filtering action.

In its infringement contentions, ClearPlay argued that DISH's announcement and segment-bookmark files are navigation objects. Appx885-1009. DISH then sought summary judgment because those files do not contain specific filtering actions—as required by each asserted claim and by ClearPlay's arguments that the PTO had relied

upon. Appx547-548; Appx564-566. ClearPlay responded by reversing course from its IPR positions, arguing that a navigation object's filtering action "could be located in a different data structure or file." Appx1441; *see* Appx1317-1319. The court denied DISH's summary-judgment motion without prejudice and granted ClearPlay leave to amend its contentions to "identify the specific filtering action in the accused devices." Appx3037-3038.

The claim-construction dispute then seemed to fall away. At *Markman*, the parties agreed to the meaning of key terms, including "navigation object." The district court adopted those agreed-upon constructions:

- **"Navigation object"** – "Plain and ordinary meaning (as defined by the terms of the claims themselves)." Appx3144.
- **"Filtering action"** – "An action that edits or rejects some multimedia content while allowing other multimedia content to be unchanged." Appx3148-3149.
- **"Configuration identifier"** – "An identifier of the consumer system (including hardware and software) that is used to determine if the navigation objects apply to the particular consumer system." Appx3151-3152.

But the claim-construction dispute reemerged when ClearPlay sent DISH correspondence "reserv[ing] the right to assert" earlier expert

opinions inconsistent with ClearPlay's IPR assertions that a navigation object must contain its own specific filtering action. Appx4568.

Compounding the confusion, during subsequent ex parte reexaminations, ClearPlay flipped back to—and convinced the PTO to adopt—its IPR view. In the reexaminations, ClearPlay and the PTO confirmed that navigation objects must contain their own specific filtering actions. ClearPlay continued to distinguish the prior art on the theory that each navigation object must "include" such an action. *E.g.*, Appx4595; Appx4665; Appx4704; *see* Appx4666 (same for configuration identifier); Appx4600 ("disclos[ing] a navigation object" requires "disclos[ing] a filtering action"). The PTO agreed and confirmed the claims without amendment. *E.g.*, Appx4608-4609; Appx4682; Appx4721-4722 (holding that each navigation object "necessarily *contains* … a filtering action" and cannot be a mere "distributed 'association'" of elements).

Given ClearPlay's representations, DISH moved for supplemental construction of the three terms noted above. Appx3308-3337. DISH sought clarification that "each" navigation object has "its own" filtering action (what became known as the "single-object approach"), contrary to

ClearPlay's argument in the district court that the filtering action merely needs to be "a 'distributed association'" with start and stop positions, which would allow the action to be shared across multiple navigation objects (the "multi-object approach"). Appx3312-3313; Appx3324-3327. Relatedly, DISH sought clarification that: (a) "*each* navigation object requires" a "*distinct*" and "*explicit filtering action* be included *within the navigation object itself*"; and (b) as to the '799 patent, "a distinct configuration identifier" is also included "within" the navigation object. Appx3328-3330.

The district court (nominally) denied DISH's motion, primarily reasoning that there was "no actual dispute" that "navigation object" should be given its "plain and ordinary meaning" because "the term's scope … is defined by the claims," which resolved all issues. Appx5466-5474. As the court later explained, "[t]he order denying supplemental claim construction affirmed" that "the single-object approach to navigation object" reflects "plain and ordinary meaning" and "is the proper and consistent approach under this court's claim construction." Appx13945; *accord* Appx13943-13945.

The district court confirmed this construction in ruling on later cross-motions for summary judgment. The court granted summary judgment of no literal infringement on every ClearPlay theory invoking the "multi-object approach" (i.e., the notion "that a navigation object defines or comprises elements from multiple sources or locations"). Appx3; Appx16-17. The court reiterated that it had long rejected that approach, "ClearPlay's perpetuation" of which derived from "its misunderstanding" of earlier orders. Appx16. Under ClearPlay's mistaken "multi-object approach," navigation objects are merely an "association" of elements that "may be located in multiple sources," whereas under the "single-object approach," the elements of a navigation object must be "contained within the same object, file, or data structure (that being the navigation object)." Appx12.

The court explained that only the latter approach could be reconciled with plain and ordinary meaning: A "'navigation object' identifies itself as an 'object,'" i.e., a "structure[]" that "contain[s]" within itself "its own specific elements," lest it "cease[] to be *an object*." Appx13-15. Treating the navigation object as a "formless assigning" of "linked information from multiple sources," as ClearPlay advocated,

would eviscerate the claims' distinction between a navigation object and a plurality of navigation objects, and would depart from the patents' disclosures. Appx13-15.

On the '799 patent, the court also granted summary judgment of no literal infringement on ClearPlay's theories that relied on anything other than DISH's announcement file as the navigation object. Appx22-24. These theories "fail[ed] as a matter of law" because, under "the single-object approach to navigation object[s]," just as each navigation object must have its own filtering action, it also must have its own configuration identifier, and only the announcement file arguably had the latter. Appx23-25.

Finally, for the '970 patent, the court granted summary judgment of non-infringement on ClearPlay's theories that accused DISH's announcement files of being navigation objects, leaving only ClearPlay's segment-bookmark theories. Appx25-27. The court explained that the claim language and the intrinsic record require directly disabling a particular navigation object "so that its filtering action is ignored" during playback. Appx26. As a result, ClearPlay's announcement-file theories relying on "disabling AutoHop functionality as a whole" failed

as a matter of law. Appx26. But the court concluded that triable issues remained "regarding whether the alleged segment bookmark navigation object … is disabled such that its alleged filtering action is ignored." Appx27.

***Following the jury verdict, the district court grants JMOL of non-infringement.***

In the run-up to trial, ClearPlay continued to resist the claim language and the district court's constructions. The court thus issued pretrial rulings instructing ClearPlay to limit its literal-infringement arguments for the '799 patent to "evidence … under the single-object approach to 'navigation object.'" Appx16559. And for the '970 claims, ClearPlay could not present "a literal infringement theory that relies on the complete disabling of the AutoHop feature—the theory must be specific to the disabling of the alleged navigation object." Appx16559-16560. The court later issued jury instructions embodying those directions. Appx266-268.

Ultimately, for the '970 patent, ClearPlay accused as navigation objects AutoHop's segment-bookmark pairs, arguing only literal infringement. Appx18536. For the '799 patent, ClearPlay accused the Show Metadata announcement file as "the navigation object," arguing

infringement both literally and under the doctrine of equivalents. Appx16803; Appx17192. ClearPlay also accused this announcement file of being the "object store" *containing* navigation objects. Appx18536-18537. In short, under ClearPlay's theory, the same file simultaneously constituted "(1) the object store; (2) the plurality of navigation objects; and (3) each particular navigation object." Appx73.

At the close of ClearPlay's case, DISH moved for JMOL on issues including non-infringement, Appx16763-16794, and the court reserved ruling, Appx16897-16898; Appx19714. The jury subsequently found direct infringement and awarded ClearPlay about $469 million even though the functionality ClearPlay accused of infringement—in essence, *watching* commercials—contradicted AutoHop's purpose and its value to consumers. Appx308-312.

Following extensive further briefing and argument, the district court granted JMOL of non-infringement. Appx20797-20837. In its 50-page written order, Appx35-84, the court emphasized that ClearPlay had focused its case on the "high-level" observation "that commercials are skipped" rather than "what AutoHop code is actually doing" vis-à-vis the claim language, Appx57-58.

As to the ’970 patent, ClearPlay failed to provide legally sufficient evidence of infringement. Appx59-71. The court reiterated that the asserted claims recite a method that requires a specific sequence of steps: initially “providing for disabling” of one or more navigation objects, such that later, the specific filtering action specified by those navigation objects is “ignored” at the final “playback step.” Appx60-62. ClearPlay, however, showed only “disabling AutoHop as a whole.” Appx65-66; *see* Appx65-71.

As to the ’799 patent, the court explained that, under its long-settled construction, ClearPlay failed to provide legally sufficient evidence of infringement. Appx71-82. ClearPlay’s literal-infringement theory, under which multiple navigation objects could share a single filtering action and a single configuration identifier, ran headlong into “the single-object approach required by the court’s claim construction.” Appx73; *see* Appx73-76. And ClearPlay’s doctrine-of-equivalents theory failed both because it rested on conclusory testimony, rather than particularized evidence establishing equivalence, and because “the multi-object structure cannot be an equivalent of the single-object

structure." Appx76-82. Accordingly, ClearPlay's infringement claims failed as a matter of law.

To preserve its rights, DISH filed motions under Rules 50(b), 52, and 59, which the court declined to reach. Appx22351-22354; *accord* Appx82 (declining to reach damages and validity).[4]

## SUMMARY OF ARGUMENT

**I.** The district court correctly granted JMOL of non-infringement on the '970 patent.

**A.** The court applied the same construction of "providing for disabling" in both the jury instructions and the JMOL order. ClearPlay does not challenge the instructions here, and its argument that the construction changed post-trial disregards half of the relevant jury instruction. Specifically, while the court began by instructing that this term requires "directly disabl[ing] a navigation object," the next sentence of the instruction explained that "disabling something other

[4] Those motions therefore are not part of this appeal. *See Laitram v. NEC*, 115 F.3d 947, 952-54 (Fed. Cir. 1997); *Smith & Nephew v. Arthrex*, 603 F. App'x 981, 986 (Fed. Cir. 2015). DISH reserves its right to renew them in any further proceedings.

than the navigation object that results in the navigation object's filtering action being ignored" does not infringe.

**B.** Under that construction, ClearPlay did not introduce substantial evidence of direct disabling. ClearPlay's own expert admitted that segment bookmarks—the accused navigation objects—are not part of AutoHop's source code and never change. Nothing happens to the bookmarks themselves when a user selects "No Thanks" on AutoHop's pop-up message; ClearPlay showed only that this changes a variable in the source code to disable *all* skipping functionality. Likewise, for the hypothetical scenario where someone fast-forwards or rewinds to watch a commercial despite enabling AutoHop, ClearPlay showed only a change to yet another variable in the source code, temporarily disabling all skipping functionality without first disabling the bookmarks. ClearPlay's argument collapses the distinction between separate limitations: "disabling" and "ignoring."

**C.** Because the district court consistently construed "providing for disabling" and properly determined that no substantial evidence supported infringement, the court did not violate the Seventh Amendment in granting JMOL.

**II.** The district court also correctly granted JMOL of non-infringement of the ’799 patent.

**A.** Throughout this case, the court consistently construed “navigation object” to reflect the “single-object approach”—that each navigation object must contain “its own” distinct filtering element and configuration identifier, rather than share them with other navigation objects.

ClearPlay does not challenge this construction, which, as ClearPlay acknowledges, the court applied both before and after trial. But, ClearPlay says, JMOL must be overturned because the jury instructions departed from the single-object approach, thus permitting ClearPlay to argue infringement under a broader theory. ClearPlay is mistaken, but under settled law, this Court need not reach that question because the “navigation object” construction articulated at JMOL is correct—every aspect of the intrinsic evidence makes clear that sharing elements across objects is not permitted.

**B.** Under the single-object, no-sharing construction, there cannot be infringement.

Specifically, there is no substantial evidence of literal infringement because ClearPlay concededly relied on a shared configuration identifier and a shared piece of data for the filtering element. Nor is there substantial evidence of infringement by equivalence. ClearPlay's expert failed to provide the requisite particularized testimony; indeed, he affirmatively established lack of equivalence by criticizing the patent's no-sharing requirement as "inefficient," "pretty bad," and "ridiculous" compared to sharing.

**C.** In all events, the court did apply the same construction at JMOL as in the jury instructions: the single-object approach that it articulated throughout the case.

**III.** In the alternative, JMOL of non-infringement is warranted on the '799 patent because the claim requires a navigation object originally created within the object store to exist until all method steps have completed with respect to that same navigation object. ClearPlay, however, relied on an alleged navigation object—the announcement file—that undisputedly is deleted before the method completes.

## ARGUMENT

### I. The District Court Correctly Granted JMOL That DISH Does Not Infringe The ’970 Patent.

ClearPlay challenges JMOL on the ’970 patent on the theory that the court’s claim construction after trial differed from the one in the jury instructions. On the contrary, the court applied a consistent construction at summary judgment, in the jury instructions, and at JMOL.

ClearPlay tells a tale of claim construction run amok and a court that ran roughshod over the Seventh Amendment. It advances this “alternate reality of claim construction,” Appx85-89 (JMOL order), only because, as the district court properly recognized, ClearPlay cannot prevail under the construction given to the jury. That instruction about “providing for disabling” required ClearPlay to show that any disabling acts “directly” on segment bookmarks to prevent them from instructing AutoHop to skip commercials. § I.A. ClearPlay introduced no evidence of such direct disabling for either of its infringement theories: selecting “No Thanks” at AutoHop’s pop-up message, § I.B.1, and fast-forwarding/rewinding into a commercial, § I.B.2. Those actions affect only variables in AutoHop’s source code, thereby avoiding all skipping.

They do not affect (as the claims require) the individual segment bookmarks themselves, which are separate from the source code.

### A. Post-trial, the district court applied the same construction of "providing for disabling" on which it instructed the jury.

We start with the construction itself—which ClearPlay has not challenged on appeal—before explaining why nothing changed at JMOL.

#### 1. The claim construction was correct.

Claim 27 of the '970 patent, from which the asserted claims depend, recites: "providing for disabling of one or more of the navigation objects such that the specific filtering action specified by the disabled navigation object is ignored." Appx340 23:41-43. These claims—and this limitation—focus on selectively *disabling* navigation objects to *prevent* content-filtering that otherwise would occur. Appx60-61. ClearPlay aimed to give consumers a "precise" way to remove content they deemed "unwanted" while still keeping content that other viewers might find objectionable. Appx18036. The district court instructed the jury that "providing for disabling" means:

> providing for some action to be taken to disable a navigation object so that its filtering action is ignored. An action must

> directly disable a navigation object so that its filtering action is ignored, *as opposed to disabling something other than the navigation object that results in the navigation object's filtering action being ignored*.

Appx267 (emphasis added; cleaned up); Appx19836-19837. For simplicity, we call the italicized language the "Disabling Exclusion."

ClearPlay does not argue that the instruction erroneously construed "providing for disabling." It just notes in passing that it objected to the instruction during trial. Opening Brief (OB) 15, 32, 40. Thus, ClearPlay forfeited any challenge to the instruction by "merely allud[ing]" to the issue here. *Rodriguez v. Dep't of Veterans Affairs*, 8 F.4th 1290, 1305 (Fed. Cir. 2021).

Instead, ClearPlay argues that the court erroneously deviated from that instruction when it granted JMOL. OB40-42. ClearPlay focuses on the language "disable a navigation object." Specifically, ClearPlay says that language encompasses altering any "variables controlling commercial skipping" even while leaving untouched the claimed navigation objects—the segment bookmarks. OB41-42. ClearPlay contends the court narrowed that understanding at JMOL. OB40-41. This argument ignores both the claim language and the instruction embodying it.

Claim 27 recites "providing for disabling *of one or more of the navigation objects* such that the specific filtering action specified by *the disabled navigation object* is ignored." Appx340 23:41-43 (emphases added). Twice, this language shows that the navigation object itself must be disabled. It first recites "disabling of … the navigation object[]," and then, with the phrase "the disabled navigation object," emphasizes that the navigation object has been disabled. So, disabling must operate on a particular navigation object before the filtering action that the object "specifie[s] … is ignored." Appx340 23:41-43.

This tailored disabling is essential to the claimed technology, which allows users, buffet-style, to pick and choose which parts of a show or movie they want to see. *See* Appx61-62; Appx64 & n.124. The district court recognized this—in the instruction ClearPlay does not challenge—by construing "providing for disabling" to require an action that "*directly* disable[s] a navigation object so that its filtering action is ignored." Appx267 (emphasis added). To do something "directly" means that the causal chain is immediate, "without an intervening agency or step." *Direct*, The Merriam-Webster Dictionary (2022). Thus, disabling something *other than* the navigation object—with merely the

ultimate effect of preventing the navigation object's filtering action from occurring—would be indirect rather than direct disabling. You can directly disable a lamp by turning off its switch, but no one would say you "turned off a lamp" by cutting power to the house.

The court unequivocally instructed the jury about this with the Disabling Exclusion, which explained that the claims do not cover "disabling something other than the navigation object that results in the navigation object's filtering action being ignored." Appx267. ClearPlay simply ignores this exclusion.

**2. The court did not modify its claim construction after trial.**

The court's JMOL order was entirely faithful to the construction embodied in the jury instruction. Indeed, the court started by repeating the exact instruction it gave the jury. Appx43-44; Appx63.

Then the court permissibly "elaborate[d] on a meaning inherent in the previous construction," *Mformation Techs. v. Rsch. in Motion*, 764 F.3d 1392, 1397 (Fed. Cir. 2014), by simply plugging the segment bookmarks into the instruction as the accused navigation objects:

| Jury instruction | JMOL order |
| --- | --- |
| "An action must directly disable a navigation object so that its filtering action is ignored, as opposed to disabling something other than the navigation object that results in the navigation object's filtering action being ignored." Appx267. | "[T]he 'action must directly disable' DISH's segment bookmarks rather than acting on or disabling something else that indirectly affects the segment bookmark or simply results in the segment bookmarks being ignored." Appx63-64 (quoting Appx267). |

"In other words," the court explained, "[t]he plain meaning of the claims requires evidence that a segment bookmark, *itself*, must be disabled … in such a way that its filtering action is ignored." Appx63-64. This "merely made plain what … should have been obvious to the jury." *Cordis Corp. v. Boston Sci.*, 658 F.3d 1347, 1356 (Fed. Cir. 2011); *see Finjan v. SonicWall*, 84 F.4th 963, 971 (Fed. Cir. 2023) (recognizing district courts' authority "to clarify" previous constructions). Because "disabling something other than the navigation object" does not meet the "providing for disabling" limitation, individual segment bookmarks themselves must be disabled to infringe.[5]

[5] Consistent with the Disabling Exclusion, at both summary judgment and in addressing motions in limine, the court explained that "disabling AutoHop functionality as a whole is broader than the Disabling Claims' limitations for disabling navigation objects." Appx26; Appx59-60;

ClearPlay ignores the full instruction. It acts as though the jury heard only that "[a]n action must *directly disable* a navigation object," protesting that "[t]he court did not provide further instruction on the meaning of 'directly' or 'disable.'" OB31 (quoting Appx267). Even setting aside that ClearPlay never grapples with the critical word "directly," the Disabling Exclusion provides exactly this "further instruction." *See* Appx267. ClearPlay therefore is incorrect that "the jury instruction did not include" the JMOL order's explanations that the segment bookmark itself must be disabled and that "disabling something else *that indirectly affects* the segment bookmark" does not infringe. OB40-41 (quoting Appx64).

ClearPlay's remaining objections concern phrases in the JMOL order that are merely specific articulations of this same instruction. Sometimes ClearPlay objects (OB40-41) that the JMOL order said disabling requires "that some action is taken on one or more of DISH's

---

Appx16559-16560; *contra* OB40-41 (suggesting lack of notice). ClearPlay complains that "the court did not instruct the jury with its summary judgment order." OB41. But the court instructed the jury with the same construction it employed at summary judgment, which ClearPlay disregarded by advancing theories directed to disabling all skipping functionality in AutoHop.

segment bookmarks." Appx65; *see* Appx66-67; Appx70. But this language just restates ClearPlay's *own theory* (OB33) that the segment bookmarks are the navigation objects. Elsewhere ClearPlay protests that "the jury was not instructed that 'directly disable' excluded disabling AutoHop 'as a whole.'" OB36 (quoting Appx267). But of course it was; this statement just reiterates the Disabling Exclusion using the accused product's name.[6]

### B. There is no substantial evidence that AutoHop meets the "providing for disabling" limitation.

ClearPlay introduced no evidence that AutoHop directly disables segment bookmarks. To hear ClearPlay tell it, the court improperly reweighed the evidence. On the contrary, ClearPlay's arguments depend on erroneously re-interpreting the jury instruction to mean that any action that somehow results in a commercial not being skipped amounts to "directly disabling" navigation objects. Under a proper understanding of the instruction, no substantial evidence supports the

[6] Thus, it is irrelevant that the district court did not accept DISH's proposal to instruct the jury "that simply turning on or off functionality as a whole (e.g., turning the AutoHop feature as a whole on or off) is not disabling." OB42 (quoting Appx14929). The court just delivered the instruction without using the accused feature's name.

verdict because ClearPlay proved only that users can completely turn off AutoHop's skipping functionality, not that AutoHop directly disables particular navigation objects.

#### 1. Choosing "No Thanks" does not directly disable segment bookmarks.

At issue here are the pairs of segment bookmarks within a segment-bookmark file that ClearPlay accused as the claimed navigation objects. *See* Appx62-63. But no evidence showed AutoHop acting on or disabling those bookmarks directly, as the instruction requires. Appx267. Moreover, ClearPlay's argument relies on stricken testimony.

**a.** According to ClearPlay, when a user selects "No Thanks" in response to AutoHop's pop-up message, that directly disables segment bookmarks. OB34-37. No substantial evidence supports this assertion. The pop-up asks users whether they would "like to *enable AutoHop*." Appx17350 (emphasis added). Unsurprisingly, then, selecting "No Thanks" "only causes AutoHop *as a whole* for the selected playback session to not be enabled. There is no action directly disabling the segment bookmarks." Appx67 (emphasis added). Choosing "No Thanks" therefore does not infringe because, at most, it "disabl[es]

something other than the [segment bookmark] that results in the [segment bookmark's] filtering action being ignored." Appx267 (claim construction). And ClearPlay "pointed to no code, command, or other process that would directly disable the segment bookmarks, as opposed to AutoHop as a whole." Appx66.

The district court got this right. ClearPlay's expert, Dr. Feamster, testified that choosing "No Thanks" sets the "Source Code [redacted]" variable in AutoHop's source code to "Source Code [redacted]," causing AutoHop not to skip commercials for that viewing. Appx18520-18523; Appx17396; *see* Appx20591-20592 (source code).[7] That is, the "Source Code [redacted]" variable controls whether "AutoHop [is] enabled for this show." Appx18522. But the undisputed evidence shows that this "Source Code [redacted]" variable is not part of a segment bookmark or a segment-bookmark file. Appx24127; Appx17367 (Feamster's demonstrative showing "segment bookmark contents"). Instead, that variable lives in a separate data structure ("Source Code [redacted]") in AutoHop's source code. Appx20609-20613; *see* Appx18484 (Feamster describing this structure as containing "variables controlling … playback"). By contrast, as Feamster acknowledged,

---

[7] "Source Code [redacted]" refers to "Source Code [redacted]" in the source code.

segment-bookmark files are "separate and distinct" from AutoHop's software and are "not a part of the source code" for AutoHop. Appx18770-18771; Appx18773.

Thus, when a user selects "No Thanks," *nothing happens to the segment bookmarks themselves*. Appx66-67 & n.137. Rather, AutoHop is "not enabled" *as a whole* and does not skip any content for that viewing of a show. Appx18382; Appx18520-18523. If the viewer chooses "No Thanks," the system does "not do[] AutoHop," Appx18382, so every commercial plays. At best, this evidence shows alleged filtering actions being ignored. ClearPlay admitted as much at summary judgment, claiming the evidence showed that "[i]f AutoHop is disabled, the segment bookmarks are ignored." Appx11200. But merely ignoring filtering actions (or segment bookmarks) without directly disabling the segment bookmarks does not meet the "providing for disabling" limitation. *See* Appx267; *contra* OB34-35.

ClearPlay's argument (OB37, 43-46, 51) that a navigation object is disabled whenever some action, however remote, eventually causes a filtering action to be ignored, impermissibly collapses the distinction between the claim terms "disabling" and "ignoring." Appx340 23:41-58.

These separate terms are "presumed to have different meanings." *Amgen v. Sandoz*, 923 F.3d 1023, 1031 (Fed. Cir. 2019) (citation omitted). Under claim 27, it is not enough that a filtering action does not occur; the claim construction requires "*disabl[ing]* a navigation object *so that* its filtering action is ignored." Appx267 (emphasis added); *see* Appx25-26 (summary-judgment order emphasizing this language); Appx61-65 (JMOL order). ClearPlay fails to "give[] meaning to all the [claim] terms." *Amgen*, 923 F.3d at 1032.

Likewise, ClearPlay disregards that "disabling" and "ignoring" are separate steps that must be performed sequentially. The claim makes clear that content must first be identified for filtering, and only "thereafter" actually filtered. Appx340 23:32-36, 23:54-58; *supra* 8-9. This language "logically requires that the process steps" of "disabling" and "ignoring" "be performed in sequence." *Amgen*, 923 F.3d at 1028; *see Mformation*, 764 F.3d at 1398-1400. Just ignoring a filtering action without directly disabling navigation objects flouts that requirement.

**b.** Unable to dispute the source code's contents, *see* OB34-35, ClearPlay says the district court drew inferences against ClearPlay. It turns to Feamster's conclusory testimony that "AutoHop remains

enabled" when a user selects "No Thanks." OB35 (quoting Appx18519-18520); OB43-45; *cf. Yoon Ja Kim v. ConAgra Foods*, 465 F.3d 1312, 1320 (Fed. Cir. 2006) (affirming JMOL of non-infringement where patentee relied on "conclusory [expert] testimony"). But the court instructed the jury to disregard this testimony.

As the court explained, the "undisputed evidence" shows "that AutoHop is enabled for playback of a selected recording only by a 'Yes' selection from the pop-up message." Appx65-66. "Feamster testified contrary to this at trial, but … the jury was instructed to disregard any evidence or statements to the contrary," Appx66, because "Feamster was in fact using the wrong code"—for a non-Hopper set-top box with AutoHop turned off—when he formed that opinion, Appx19171-19173; *see* Appx18727-18729, Appx18732-18734 (cross-examination).[8]

---

[8] The exchange at Appx18727-18734, where DISH identified Feamster's error, belies ClearPlay's assertion that "DISH did not cross-examine Feamster about the operation of the source code." OB35. ClearPlay also says DISH's non-infringement expert, Benjamin Goldberg, "did not contest Feamster's testimony that AutoHop satisfied the 'disabling' limitations." OB35-36. But it was not DISH's burden to disprove infringement. Regardless, Goldberg explained that no AutoHop source code "can alter, modify, or permit any changes to a segment bookmark." Appx19471.

DISH's Senior Vice-President of Software, Dan Minnick, explained to the jury that the pop-up message appears "every time" a user watches a show—even one the user watched before—"because AutoHop is turned off by default" for the accused Hoppers. Appx18343; *see* Appx19055-19060 (Minnick discussing Feamster's reliance on source code for an unaccused set-top box). So, Minnick testified, when a user selects "No Thanks," the Hopper "would not use the AutoHop software, including the segment bookmark data, because it's not doing AutoHop. It's not enabled." Appx18382.[9]

Any factual issue disappeared when ClearPlay conceded that "there's really no dispute about how those ['Yes' and 'No Thanks'] buttons operate." Appx19451. Thus, the court's curative instruction memorialized ClearPlay's admission that AutoHop "must be affirmatively enabled":

> If the user selects "Yes," AutoHop skips commercials. If the user selects "No Thanks," AutoHop does not skip commercials. If the user does not select either option, the system will time out after a

[9] ClearPlay disregards this testimony when it says "Minnick identified only one way to disable AutoHop as a whole—disabling the entire Primetime Anytime feature." OB36 (citing Appx19099). Plus, Minnick said that disabling Primetime Anytime was *a* way to "shut down" AutoHop, Appx19099, not the "only way."

> few minutes, leave PrimeTime Anytime, and return to live TV. You should disregard any statements to the contrary.

Appx19458-19459; Appx307. With Feamster's testimony excluded, the sole evidence was Minnick's testimony, which the court therefore relied on in granting JMOL. Appx66.

ClearPlay glosses over that story, insisting that the curative instruction merely "set forth the parties' basic agreement" about "the user experience, not the [software's] inner workings." OB44. But ClearPlay does not even try to explain what it believes the court told the jury to disregard, if not Feamster's statements about AutoHop remaining enabled. Moreover, this Court must "give deference to the district court's interpretation of its own order." *United States v. Williams*, 898 F.3d 1052, 1055 (10th Cir. 2018) (citation omitted). The court made clear that it had instructed the jury to disregard any statements that AutoHop remains enabled even if the viewer selects "No Thanks." Appx65-66.

### 2. Fast-forwarding and rewinding do not directly disable segment bookmarks.

Similarly, no substantial evidence shows that fast-forwarding or rewinding into a commercial directly disables segment bookmarks.

Fast-forwarding or rewinding into a commercial would occur only if a user enabled AutoHop but then decided that she wanted to watch a commercial. This hypothetical TV-watcher would thus fast-forward past the point where AutoHop would otherwise skip the commercial to prevent the skip from occurring. Even ClearPlay's counsel admitted to having no evidence of "how often that would happen." Appx17939. And at trial, ClearPlay "pointed only to code that bypasses or ignores the standard playback software, which thereby *indirectly* affects the use made of segment bookmarks when the media is fast-forwarded." Appx71 (emphasis added).

Simply put: When the user fast-forwards or rewinds into a commercial, *nothing happens to the segment bookmarks themselves*. Segment bookmarks are not first disabled and then ignored, as the claim requires. *Supra* 39. Rather, they are "ignor[ed] or bypass[ed]" as "an indirect consequence of [AutoHop] not being in standard playback mode." Appx69. As Feamster put it, fast-forwarding just means that "skipping would be disabled." Appx18524.

Specifically, Feamster testified that fast-forwarding or rewinding into a commercial changes the value of the variable "Source Code [redacted],"

Source Code

which is set to "[redacted]" during normal playback (when the user is "not fast-forwarding and not rewinding"). Appx18523-18525 (discussing Appx20618); *see* Appx17398 (demonstrative); Appx69.[10] When a user fast-forwards or rewinds, the system sees that the

Source Code Source Code

"[redacted]" variable is not set to "[redacted]" and then "ignore[s]" the segment bookmarks, meaning "skipping would be disabled." Appx18524-18525; Appx69-70.

Source Code

Source Code

But it is undisputed that this "[redacted]" variable, like the "[redacted]" variable (*supra* 37), is not part of, and does not act on, the navigation object (i.e., the segment bookmark); instead, it lives within, and affects execution of, the source code. *Compare* Appx20618, line 5810, *with* Appx17367 (showing "segment bookmark contents"); *see* Appx18524-18525. Again, "Feamster agreed that the AutoHop software, *i.e.*, the source 'code that executes' on the Hoppers, is separate and distinct from the announcement files and the segment bookmark files." Appx70 (quoting Appx18770-18771).

Source Code Source Code

[10] "[redacted]" refers to "[redacted]" in the source code (erroneously transcribed as "index or mode").

ClearPlay cannot dispute how DISH's source code works. *See* OB34-35. So, again, ClearPlay points to Feamster's conclusory assertions that changing the "[redacted]" variable so its value is not "[redacted]" "disables the particular pair of segment bookmarks that the user fast-forwards or rewinds into." OB35-37, 46 (citing, *e.g.*, Appx18524-18525; Appx18607-18608). But "just saying that something is so does not make it true, especially when there is no record support" for the expert's assertion. *Dominion Energy v. Alstom Grid*, 725 F. App'x 980, 986 (Fed. Cir. 2018).

Feamster's ipse dixit about disabling does not show any action taken *directly* on the segment bookmarks themselves, or anything except "disabling something other than the navigation object that results in the navigation object's filtering action being ignored." Appx267; *see Kim*, 465 F.3d at 1320 ("conclusory [expert] testimony" cannot preclude JMOL); *Vocalife v. Amazon.com*, 2022 WL 2986786, at *2 (Fed. Cir. July 28, 2022) (rejecting expert's "conclusory, unsupported testimony" as "insufficient to support" an infringement verdict). At most, Feamster showed that fast-forwarding or rewinding into a commercial temporarily turns off all filtering functionality without, as

the claims require, first *disabling* the corresponding segment bookmarks.

Likewise, Minnick's testimony that "AutoHop software is running underneath" when the viewer fast-forwards into a commercial does not help ClearPlay. Appx18347 (cited at OB35, 46). This says nothing about directly disabling segment bookmarks, which Feamster conceded are "separate and distinct" from AutoHop's software. Appx18770-18771. Moreover, Minnick demonstrated to the jury that if a user fast-forwards into a commercial such that the commercial plays, and then rewinds to the portion of the show before that commercial, AutoHop will skip the commercials on the second go-round. Appx18346-18348. This shows "that the segment bookmark has not been changed or been disabled at all." Appx70.

### C. The district court did not usurp the jury's role.

Finally, ClearPlay makes various assertions that the district court "invaded the province of the jury." OB40 (capitalization altered); *e.g.*, OB28-30, 40-46. These invocations of the Seventh Amendment are just repackaged arguments that the court applied new claim constructions after trial and ignored evidence. As explained above, the court did

neither. And the Supreme Court has "made clear" that courts "may order entry of [JMOL] on sufficiency-of-the-evidence grounds without violating the Seventh Amendment." *Weisgram v. Marley*, 528 U.S. 440, 454 n.10 (2000); *see Boyle v. United Techs.*, 487 U.S. 500, 513 (1988). That leaves ClearPlay with a hodgepodge of complaints, none of which establishes any error, much less reversible error.

First, ClearPlay says the court "erroneously dismissed 'analogies to common experiences,'" such as when ClearPlay's opening statement compared "AutoHop's ability to disable to that of a thermostat." OB48-49 (quoting Appx58). But "lawyers' statements are not evidence," *TiVo v. EchoStar Commc'ns*, 516 F.3d 1290, 1310-11 (Fed. Cir. 2008), as the court properly instructed the jury, Appx240.

Next, ClearPlay emphasizes that infringement is a question of fact for the jury. OB49. But Rule 50 authorizes courts to correct jury verdicts that are unsupported by the evidence.

ClearPlay also protests that the court "discarded probative evidence" when it deemed the source code "the dispositive relevant evidence." OB46-48 (quoting Appx57). But the "high-level evidence" ClearPlay points to proves only "the unremarkable and undisputed fact

that AutoHop skips commercials." Appx57-58. The single technical document ClearPlay identifies (OB47-48), for example, just says that AutoHop's software "should allow the user to easily enable or disable automatic Interstitial skipping"—i.e., commercial-skipping. Appx23922; Appx18262; Appx1072. This document says nothing about disabling segment bookmarks, much less directly disabling them.

As the court noted, "[t]here are only so many ways of conveying the message that commercials are not played," and using the word "disable" in advertising or technical documents "does not demonstrate what AutoHop code is actually doing." Appx57-58. That reasoning aligns with *Plastic Omnium Advanced Innovation & Research v. Donghee America*, which rejected the patentee's argument that the appearance of a claim term in the defendant's "own product literature" showed infringement. 943 F.3d 929, 935-36 (Fed. Cir. 2019). *Plastic Omnium* explained that the claim language "as construed by the court—not [the defendant's] product literature—controls whether the accused product falls within the scope of the claim." *Id.*; *see Fantasy Sports Props. v. Sportsline.com*, 287 F.3d 1108, 1119 (Fed. Cir. 2002)

(recognizing the importance of determining whether "software underlying th[e accused] product supports" an infringing feature).

Moreover, Feamster himself testified that "to really understand if the software is meeting these claims, one has to read the code." Appx18764; *see* Appx18608; Appx57 n.99. Technical documentation can "provid[e] context …, but we don't know what it's actually doing unless we look at the code." Appx18436. Giving primacy to the undisputed source code—consistent with ClearPlay's own expert's testimony—does not constitute "reweigh[ing] the evidence" or rejecting expert testimony. *Contra* OB47.

Finally, ClearPlay says the district court had to "consider the record in its entirety" rather than issuing JMOL under Rule 50(a). OB50-51 (quoting *Stroup v. United Airlines*, 26 F.4th 1147, 1156 (10th Cir. 2022)). But *Stroup* addressed a Rule 50(b) motion, so it is inapposite. 26 F.4th at 1151. And a court may "reserve[] ruling on [a] Rule 50(a) motion until after the jury return[s] its verdict." *Miller v. Kenworth of Dothan*, 277 F.3d 1269, 1275 n.4 (11th Cir. 2002); *accord Nichols Constr. v. Cessna Aircraft*, 808 F.2d 340, 355-56 (5th Cir. 1985); *First Safe Deposit Nat'l Bank v. W. Union Tel.*, 337 F.2d 743, 746 (1st

Cir. 1964). ClearPlay argues (OB50) that *Peguero-Moronta v. Santiago* holds otherwise, but *Peguero-Moronta* agrees that a reviewing court cannot rule for the appellant when, as here, "the totality of the evidence did not permit [the appellant's] case to go to the jury." 464 F.3d 29, 33 (1st Cir. 2006).

Besides, ClearPlay has not shown what additional evidence the district court should have considered. In just two sentences, ClearPlay identifies tiny snippets of testimony from DISH's experts that purportedly "demonstrated a broad application of the claimed 'disabling' limitation." OB50-51. This argument is so cursory as to be forfeited. *See Rodriguez*, 8 F.4th at 1305. ClearPlay is also mistaken that the jury could have relied on this testimony to "find that 'directly disabling' could be accomplished in many ways and not just by changing the navigation object itself." OB51. That would have meant disregarding the jury instructions. *Supra* 29-32. Likewise, ClearPlay's insistence (OB51) that the jury could have "rel[ied] on the absence of any DISH rebuttal to Feamster's 'disabling' testimony" fails because nothing in that testimony provided substantial evidence of infringement, and

ClearPlay cannot shift its burden by making DISH disprove infringement. *Supra* 36-46.

## II. The District Court Correctly Granted JMOL That DISH Does Not Infringe The '799 Patent.

ClearPlay argues that the district court improperly granted JMOL on the '799 patent by deviating from the jury instruction concerning "navigation object." On the contrary, the court construed that term correctly and consistently throughout the case.

As set forth above (at 18-21), the court repeatedly made clear that it was adopting the "single-object approach" to the term "navigation object." That is, each navigation object must include its own distinct filtering element and configuration identifier, not shared with other navigation objects. Appx73-76. ClearPlay's contrary understanding would lead to a bizarre result: that the same file would serve simultaneously as the "particular navigation object," the "plurality of navigation objects," and the "object store" that *contains* the plurality of objects. Appx73. The court's construction was correct. § II.A. And, under that construction, ClearPlay cannot prevail. That alone suffices to affirm. § II.B.

Notably, on appeal, ClearPlay does not dispute that the court applied the single-object construction both before trial and after. ClearPlay also does not separately advance the "multi-object approach" to claim construction, which it argued below. Instead, it argues only that the JMOL order (embracing the single-object approach) differed from the relevant jury instruction. In short, under ClearPlay's theory:

- the court adopted the single-object approach numerous times throughout the case;
- nonetheless, without saying it was doing so, the court issued a jury instruction permitting the multi-object approach;
- so the jury verdict must be reinstated, even though (on ClearPlay's theory) it rests on an instruction different from the court's consistent single-object construction.

The court did no such implausible thing, and this Court should not embrace this counterintuitive result. JMOL should be affirmed, both because that is the correct result under the correct construction, and because the jury instruction was fully consistent with the court's construction throughout the case. § II.C.

### A. The district court correctly construed claim 12 to prohibit sharing under the single-object approach.

As noted, the claim-construction dispute arose out of ClearPlay's theory that a single file in AutoHop—the announcement file—

simultaneously constitutes three separately claimed structures that (ClearPlay says) share elements: the "object store," "the plurality of navigation objects," and "each particular navigation object." ClearPlay argued that "the announcement file [i]s the navigation object." Appx16803 (Rule 50(a) opposition); Appx17192 (proposed fact findings); *see, e.g.*, Appx21139-21140; Appx21869. Elsewhere, ClearPlay argued that the announcement file also is the "object store" that *contains* the plurality of navigation objects. *E.g.*, Appx18536-18537; Appx18556-18558; Appx21134-21140. In short, ClearPlay's theory was that you can mix and match the data elements within that single announcement file in different groupings and combinations, thus turning this one omnibus file into three distinctly claimed elements. *See, e.g.*, OB57 (diagram reflecting this theory). The court rejected this conflation of distinctly claimed elements. Appx73-76; Appx20818-20820; *see* Appx14-15 (summary judgment).

ClearPlay's theory also ran afoul of the single-object requirement of the plain-and-ordinary construction: that separate navigation objects cannot share the same filtering element and configuration identifier. As the court explained, "each navigation object" must "contain[] its own

specific elements." Appx14-15 (summary-judgment order). This "construction remained consistent throughout the litigation." Appx88. And the intrinsic evidence compels it.

**Claim language.** Claim 12 is replete with language prohibiting sharing generally, let alone via ClearPlay's omnibus-file theory.

For instance, the claim makes clear that each navigation object must contain its own configuration identifier. The claim twice refers to "*the* configuration identifier of *the particular* navigation object." Appx372 22:18-19, 22:23-24 (emphases added). Assigning a single configuration identifier to multiple navigation objects would mean that the configuration identifier is not "of" any "particular" object. And this would contradict "the plain meaning of 'particular'": "associated with a single" thing. *WARF v. Apple*, 905 F.3d 1341, 1348 (Fed. Cir. 2018); *see also Perez-Zenteno v. U.S. Att'y Gen.*, 913 F.3d 1301, 1310 (11th Cir. 2019) ("'Particular' means 'of, relating to, or being a single definite person or thing ....'" (quoting Webster's Third New International Dictionary (1966))). Thus, *WARF* found no substantial evidence of infringement where the claim limitation referred to a prediction associated with a "particular" load instruction, but in the accused

device, the prediction was associated with multiple instructions. *WARF*, 905 F.3d at 1348. Claim 12's reference to "*the* particular" navigation object reinforces the need for a unique configuration identifier: "It is a rule of law well established that the definite article 'the' particularizes the subject which it precedes." *Am. Bus Ass'n v. Slater*, 231 F.3d 1, 4-5 (D.C. Cir. 2000) (citation omitted).

Each navigation object likewise must contain a distinct filtering element. The claim requires "activating the filtering action assigned to *the particular* navigation object." Appx372 22:10-11 (emphasis added). If a filtering action were shared across navigation objects, it would not be "assigned to" any "particular" object.

Furthermore, the claim language forecloses sharing in the way that ClearPlay advocated. ClearPlay's theory—that one single file can simultaneously constitute the separately recited individual "navigation object," "plurality of navigation objects," and "object store"—improperly ignores the patent's consistent treatment of these terms as separate components. "Where a claim lists elements separately, … there is a presumption that those components are distinct," and interpreting them to be "the same structure" would be "nonsensical" when they are recited

as connected to one another. *Barrday v. Lincoln Fabrics*, 2023 WL 7871688, at *4 (Fed. Cir. Nov. 16, 2023) (collecting cases; cleaned up).

Indeed, as Feamster conceded, a plurality requires "more than one." Appx18537; Appx18556. So the plurality of navigation objects cannot be the same thing as the "particular navigation object," Appx14-15; Appx75, especially given Feamster's further concession that each navigation object must be "capable of being distinguished from others in the plurality," Appx18711.

Moreover, the claim requires that "the object store *includ[e]* a plurality of navigation objects," Appx372 21:59-65 (emphasis added), which further connotes difference, *see Genentech v. Amgen*, 289 F.3d 761, 769 (Fed. Cir. 2002) ("Because the ribosome binding site 'includes the S–D sequence,' … the ribosome binding site clearly includes something else."); *Include*, The Merriam-Webster Dictionary (2022) ("part of a whole"). The object store also undisputedly "contains" the plurality. Appx268; Appx3156. A container is not the same thing as that which it contains. *See Ecolab v. Paraclipse*, 285 F.3d 1362, 1374 (Fed. Cir. 2002) ("The ordinary meaning of 'contain' is 'to have within.'" (quoting Webster's Third New International Dictionary, 490-91 (1966))).

The same is true of a "store," which is "a place where things are kept." Concise Oxford English Dictionary (12th ed. 2011). A silo "contains" grain and is a "store" for grain, but no one thinks that the silo *is* grain.

**Written description.** The patent's disclosure confirms this single-object construction. No embodiment shares elements. To the contrary, the written description refers exclusively to navigation objects containing their own distinct elements.

In "the present invention," each "filtering action" or "editing action" is "assigned to" "a particular navigation object." Appx348, Abstract; Appx363 4:63-65. Moreover, like the claim, the description repeatedly treats the store, the plurality of navigation objects, and any given navigation object as separate structures. For example, "[t]he present invention" involves creating navigation objects that "are placed in" the store. Appx363 4:44-50; *see* Appx371 19:48-51 (describing separate steps of "creating an object store" and "placing the navigation objects in" it). "[P]lacing" the navigation object in the object store would be nonsensical if the navigation object *is* the store. The patent repeatedly reaffirms this relationship between the structures, with the

object store "contain[ing]" navigation objects that are "stored" "in" or "[w]ithin" it. *E.g.*, Appx367 11:65-66, 12:23-24; Appx368 14:3-4.[11]

The patent's figures depict this same relationship. Figure 3A shows the object store (316a) "contain[ing]" a plurality of navigation objects, "each" of which (like 320a) separately contains the requisite elements, including its start and stop times (321a, 323a), filtering action (325a), and configuration identifier (329a). Appx367 11:65-12:20.




Appx5565; Appx320. Likewise, if the navigation objects and the object store were one and the same, it would make no sense for Figure 7 to

[11] Although "[t]here is no particular limitation on the *format* of the navigation objects and the object store," this flexibility does not extend to their content or distinctiveness. Appx363 4:50-52 (emphasis added). The patent's next sentence makes this clear: "[T]he object store may be a file, such as a database and the navigation objects may be records within the database." Appx363 4:52-54.

"create navigation objects" separately from "creat[ing] the object store," much less to "place navigation objects in [the] object store":




Appx361; *see* Appx371 19:46-51. Finally, and similarly, the patent repeatedly describes retrieving individual navigation objects seriatim to process their distinct elements. E.g., Appx368 14:50-51; Appx369 15:11-12, 15:34-36.

**Prosecution history.** Tellingly, in the IPRs and reexaminations (*supra* 14-15, 17), ClearPlay repeatedly advocated the single-object approach and rejected sharing between navigation objects. At minimum, these statements "inform the claim construction." *Univ. of Mass. v. L'Oréal*, 36 F.4th 1374, 1379 (Fed. Cir. 2022) (citation omitted).

ClearPlay argued—and the PTO agreed—that ClearPlay's patents were distinguishable over Abecassis on exactly this single-object basis. ClearPlay agreed that its navigation object differed from Abecassis's video map because, in Abecassis, a filtering action was "not *within* the

*one* map." Appx3928 (emphases added); *see* Appx10014 (PTO: in Abecassis, a filtering action is "not included … in a single 'navigation object'"); Appx11363-11364 (ClearPlay: "the filtering action" must be "in the navigation object"); Appx12302 ("comprised within"). A filtering action shared between multiple navigation objects would not be "within" "one" navigation object.

Similarly, ClearPlay embraced the single-object construction when it persuaded the PTO that its filtering action is "*part of* a navigation object." Appx12233-12234; Appx12416; *see* Appx11314 (same for configuration identifier). That language is telling; no one would say strings that are "part of" one tennis racquet also are "part of" another one. *See also* Appx3698 ("[Y]ou're going to see those three elements *in the navigation object*." (emphasis added)); *see* Appx11362 ("[Y]ou're providing the three pieces of information that is the navigation object."); Appx11379 ("You have to have all three of those."); Appx11402 ("[T]hree associated pieces of information, a start position, a stop position and a specific filtering action …. You've got to have all three of them there."); Appx11394.

Elsewhere, ClearPlay rejected the idea of sharing. For instance, ClearPlay represented that navigation objects "are simple *bundles* of information *that are not dependent on one another*." Appx13842 (emphasis added). If navigation objects share elements, then the navigation objects cannot be independent. That doubly forecloses ClearPlay's particular sharing theory, in which a single, omnibus file constitutes a plurality of navigation objects. If one file constituted all navigation objects, the objects would be the opposite of independent—they would be the very same thing. Furthermore, the file would be *one* "bundle," not "bundle<u>s</u>." Accordingly, ClearPlay made clear that navigation objects and the object store are separate structures. *E.g.*, Appx4616-4617 (navigation objects are "placed in" and "read[] … from" the object store). If all this was true in proceedings conducted under the broadest-reasonable-interpretation standard, then it is truer here, where the narrower *Phillips* standard controls.

ClearPlay had good reason for making these statements. To overcome prior art, it had to argue that a navigation object cannot consist of a mere "distributed 'association'" of elements. Appx4721-4722 (PTO); *see* Appx3798 (ClearPlay: "It is unreasonable to interpret three

discrete objects as a single … navigation object, as claimed.”); Appx4007, Appx4018-4019, Appx13831 (a navigation object’s elements must be “directly associated”). But ClearPlay’s litigation-inspired sharing theory—by which every element of every navigation object is lumped together in a single omnibus file—is just “distributed association” by another name, as ClearPlay’s own diagram makes clear:




OB57. These colored lines, which ClearPlay drew, are simply ClearPlay’s way of trying to create an “object” where none exists. As the district court recognized, under ClearPlay’s theory, “the navigation object ceases to be *an object*.” Appx74 (quoting Appx13).

### B. The district court correctly determined that there is no substantial evidence of infringement under the correct construction.

On appeal, ClearPlay does not challenge the district court's single-object construction. Instead, its sole argument is that the JMOL order applying that construction departed from the jury instruction. And while that argument is incorrect (§ II.C.), it also is beside the point. JMOL may be granted on a correct construction, regardless of the jury instruction. § II.B.1. And under the single-object construction, there cannot be infringement. § II.B.2.

#### 1. The district court had the obligation to apply the proper construction.

"When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it." *O2 Micro Int'l v. Beyond Innovation Tech.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008). As ClearPlay acknowledges (OB54), DISH advanced the single-object construction at JMOL, as it had throughout the case.[12] And JMOL is

---

[12] *E.g.*, Appx3315, Appx3321, Appx3330 (motion for supplemental claim construction arguing that "each" navigation object must contain its "*own distinct filtering action*"); Appx3328 (same for configuration identifier); Appx14927-14928 (proposed instruction); *see generally supra* 15-21.

appropriate even when "an infringement verdict relies on an incorrect claim construction," so long as "no reasonable jury could have found infringement under the proper claim construction." *Simpleair v. Sony Ericsson Mobile Commc'ns*, 820 F.3d 419, 425 (Fed. Cir. 2016); *Finisar v. DirecTV Grp.*, 523 F.3d 1323, 1333 (Fed. Cir. 2008).

In fact, ClearPlay has forfeited any argument for the multi-object approach. As explained above (at 16, 18-21), both parties stipulated to "plain and ordinary meaning"—which, the court had instructed the parties, reflects the single-object approach. *See, e.g.*, Appx12-16 (explaining ClearPlay's "misunderstanding of [the] order that denied supplemental claim construction"). ClearPlay is bound by that understanding, and certainly the district court believed *DISH* to have preserved the construction.[13]

[13] *See* Appx86-88 (rejecting ClearPlay's allegations of "untimeliness in claim construction"); *LaserDynamics v. Quanta Comput.*, 694 F.3d 51, 70 (Fed. Cir. 2012) ("whether or not the district court could have deemed" a post-trial argument "waived … , it did not"); *accord Otten v. BNSF Ry.*, 2023 WL 1948626, at *4, *13 (10th Cir. Feb. 13, 2023).

### 2. Under the single-object construction, there can be no infringement.

The district court correctly concluded that, under the single-object construction, both literal infringement and infringement by equivalence are impossible. Appx71-82.

**Literal infringement.** ClearPlay faces a fatal problem: The single-object approach prohibits sharing a filtering element or a configuration identifier, and ClearPlay itself recognizes that its infringement theory requires "shar[ing]" both. OB55-57. Regarding the configuration identifier, Feamster identified only the announcement file's concededly "shared" model_targeting descriptor. OB57 (citing Appx18561-18563); Appx73-76; Appx18568; Appx18710. ClearPlay presented no other configuration-identifier theory at trial. Nor does it do so here. OB55-60. ClearPlay's failure to accuse any non-shared configuration identifier is dispositive, as the district court recognized. Appx75-76.

Separately, literal infringement is foreclosed because ClearPlay failed to accuse any non-shared filtering element. As the court explained, for the filtering element, Feamster "identified only" the announcement file's Show Metadata field (also called "0x08"). Appx73-

74 & n.163; Appx18554; Appx18656-18657; Appx18709-18710. ClearPlay concedes that this field is "share[d]." OB56. As the court recognized, this concession precludes literal infringement. Appx73-74.

To overcome this concession, ClearPlay argues a filtering-element theory that Feamster himself repudiated: that "end offsets" are filtering actions. OB58-59. The district court properly rejected this theory because Feamster "admitted [that] the end offset" is not a filtering element; rather, it is "only 'used to generate the segment end bookmark' and 'derive a start position.'" Appx73 n.163 (quoting Appx18544; Appx18660-18661). When asked point-blank whether an end offset constituted "a skip filtering action," Feamster responded, "No. That's a position." Appx18660. Indeed, he testified, "I don't intend to use" an end offset to "demonstrate [that] the navigation object exists." Appx18701-18703.

Given Feamster's clear corrective statement that end offsets are not filtering actions and were not part of his infringement theory, ClearPlay's assertion (OB58-59) that Feamster earlier suggested a different understanding is irrelevant. "When the party with the burden of proof rests its case on a witness's unexplained self-contradictory

testimony, the court, in appropriate cases, may conclude that the evidence is insufficient to satisfy that standard." *ParkerVision v. Qualcomm*, 627 F. App'x 921, 924 (Fed. Cir. 2015) (affirming JMOL of non-infringement; collecting cases).

**Equivalence.** There likewise is no infringement by equivalence, for three reasons.

*First*, as the district court explained (Appx76-82), Feamster failed to provide "particularized testimony" of equivalence, including "*why*" the announcement file's function, way, and result were equivalent to a navigation object. *Tex. Instruments v. Cypress Semiconductor*, 90 F.3d 1558, 1567-68 (Fed. Cir. 1996).

Feamster said that DISH's *shared* Show Metadata field was equivalent to the claimed *non-shared* filtering element. *See* Appx18554-18557. But every bit of his testimony was general and generic. He began with the conclusory assertion that the shared field is "not substantially different." Appx18554. And he said he would "be happy to explain a little bit more about why I think it achieves the same function in substantially the same way, to achieve basically the same results." Appx18555. But that "little bit more" amounted to criticizing

the claim limitation. Feamster asserted that "you don't need it" (meaning the field) "every single time" (meaning in a non-shared form), and that a non-shared field would be "an inefficient and pretty bad way of writing the code." Appx18556-18557. Feamster then asserted the same equivalence between DISH's shared model_targeting descriptor and the claimed non-shared configuration identifier. Appx18568-18569 (equivalence existed for the "same" reasons and not sharing "would just be a ridiculous way to write your code").

This does not come close to particularized testimony explaining how the shared announcement-file elements "perform substantially the same function, in substantially the same way, to achieve substantially the same result" as their non-shared counterparts. *VLSI Tech. v. Intel*, 87 F.4th 1332, 1343-44 (Fed. Cir. 2023) (reversing jury verdict based on similarly threadbare testimony invoking "design choice"; requiring "specificity and completeness of proof"). Feamster at most provided "[g]eneralized testimony as to the overall similarity between" the limitations and the accused data, which does "not suffice." *Tex. Instruments*, 90 F.3d at 1567.

ClearPlay asserts that Feamster's testimony addressed "specific limitation[s] and did not simply compare the entire product to the claims generally," and that he drew upon "earlier testimony." OB64-65. But it never addresses his utter failure to articulate *why* the "function," "way," and "result" are equivalent. The missing "why" is dispositive. Feamster needed to articulate it to "assure that the fact-finder d[id] not, under the guise of applying the doctrine of equivalents, erase … meaningful structural and functional limitations of the claim on which the public is entitled to rely in avoiding infringement." *Tex. Instruments*, 90 F.3d at 1567 (citation omitted).

Indeed, Feamster himself made clear that using shared elements within navigation objects differs radically from using non-shared elements. He decried any lack of sharing as "inefficient," "pretty bad," and "ridiculous." Appx18557; Appx18569. As the court recognized (Appx79), this doomed equivalence: ClearPlay's expert effectively "conceded that [DISH's] products differed from the patented invention" in a material way by having the "advantage" of being shared. *Plastic Omnium*, 943 F.3d at 938 (no equivalence as a matter of law); *see Read Corp. v. Powerscreen of Am.*, 44 F. App'x 502, 506 (Fed. Cir. 2002)

(reversing jury verdict; a difference in how well a function is performed "undermines rather than supports a finding of equivalence"). ClearPlay is simply incorrect (OB65) that equivalence was "for the jury to decide" when ClearPlay's own expert agreed that sharing was so different from not sharing that the latter was "ridiculous." Appx18569.

*Second*, as the court correctly concluded (Appx81-82), ClearPlay's theory would "effectively read out" a meaningful "claim limitation." *Duncan Parking Techs. v. IPS Grp.*, 914 F.3d 1347, 1362 (Fed. Cir. 2019) (no equivalence as a matter of law). But the "doctrine of equivalents cannot be employed in a manner that wholly vitiates a claim limitation." *SciMed Life Sys. v. Advanced Cardiovascular Sys.*, 242 F.3d 1337, 1346-47 (Fed. Cir. 2001). Here, the single-object approach's restriction against sharing elements across navigation objects is a "meaningful structural and functional" restriction that "cannot be … erase[d]." *Duncan*, 914 F.3d at 1362 (citation omitted). That elements are not shared matters structurally because it helps preserve the distinction between limitations that define the claimed system's organization (the particular navigation object, the plurality of navigation objects, and the object store). *Supra* 55-59; *cf. Duncan*, 914

F.3d at 1362 (relying on the fact that the "claims fundamentally distinguish the housing from the device").

The restriction against sharing also matters functionally, because it reflects the claim's fundamental mode of operation in processing the elements of each "particular navigation object," *supra* 57-59, consistent with the patent's repeated description of retrieving each particular navigation object one-by-one rather than all at once, *supra* 59. Thus, "[n]o reasonable jury could find equivalence here because doing so would require a determination that [sharing] is substantially the same as [not sharing]—the very thing that the construction of [navigation object] excludes." *Augme Techs. v. Yahoo!*, 755 F.3d 1326, 1335 (Fed. Cir. 2014). The patent makes clear that this is a "difference in kind." *Freedman Seating v. Am. Seating*, 420 F.3d 1350, 1361 (Fed. Cir. 2005) (citation omitted).

ClearPlay contends that "[c]ourts should not 'attempt to limit the inquiry to a binary choice' and conclude 'infringement under the doctrine of equivalents is unavailable … as a matter of law.'" OB66 (quoting *Bio-Rad Lab'ys v. 10X Genomics*, 967 F.3d 1353, 1368 (Fed. Cir. 2020)). The lack of equivalence here, however, results from sharing

being "very different from" not sharing in the context of the claim and the patent as a whole. *Bio-Rad*, 967 F.3d at 1367 (citation omitted). Claim vitiation precludes equating the two.

*Third*, equivalence is foreclosed by prosecution-history estoppel. During prosecution, ClearPlay surrendered the possibility that navigation objects could share a configuration identifier. Original claim 1 did not recite a configuration identifier, Appx23026, but dependent claim 12 did, Appx23029. The examiner rejected original claim 1 as anticipated, Appx23089-23090, and "objected to [original claim 12] as being dependent upon a rejected base claim," but stated that original claim 12 "would be allowable if rewritten in independent form," Appx23096. ClearPlay made that amendment. Appx22801-22802; Appx22808. ClearPlay thereby surrendered the scope of navigation objects sharing a configuration identifier (which original claim 1 allowed by not requiring a configuration identifier at all). "[R]ewriting of [a] dependent claim[] into independent form coupled with the cancellation of the original independent claim[] creates a presumption of prosecution history estoppel," even if "the scope of the rewritten claim[] [itself] has not been narrowed." *Honeywell Int'l v. Hamilton*

*Sundstrand*, 370 F.3d 1131, 1134, 1141 (Fed. Cir. 2004). ClearPlay cannot overcome "the presumption [that] prosecution history estoppel attaches when a patentee cancels an independent claim and rewrites a dependent claim in independent form for reasons related to patentability." *Felix v. Am. Honda Motor*, 562 F.3d 1167, 1183 (Fed. Cir. 2009).[14]

### C. The district court applied the same construction at JMOL on which it instructed the jury.

According to ClearPlay (OB52-55), the district court departed from its jury instructions when, at JMOL, it applied the single-object theory and thereby rejected the idea that a single "file" can concurrently constitute "the object store," "the plurality of navigation objects" contained within that store, and "each particular navigation object." Appx73-76. On the contrary, ClearPlay has "conjured [a] revisionist

---

[14] The district court expected to address prosecution-history estoppel, *see* Appx19432, but ultimately did not do so. DISH raised the issue in its oral Rule 50(a) motion, Appx19822; its Rule 50(b) motion, Appx21064-21067; Appx22311; and before trial, Appx15471-15475 (pretrial brief); Appx16173-16176 (motion in limine). The Court therefore may address this "question of law." *Festo v. Shoketsu Kinzoku Kogyo Kabushiki*, 344 F.3d 1359, 1367 (Fed. Cir. 2003) (en banc); *see Glaxo v. TorPharm*, 153 F.3d 1366, 1371 (Fed. Cir. 1998) (appellate court can affirm on alternate grounds, particularly on an issue of law that has been "fully vetted").

history" that ignores its own repeated efforts to resuscitate the multi-object theory that the court repeatedly rejected. Appx86-88. ClearPlay "had notice of the claim construction well in advance of trial, which ClearPlay acknowledged." Appx88 & n.18. Then it "chose to either disregard the clear claim construction, or attempted to contort the claim construction to mean something it clearly did not mean and was clearly not intended to mean." Appx88.

In fact, the court gave multiple instructions—none of which ClearPlay challenges on appeal—that embodied the no-sharing understanding:

- **"Navigation object"** – "[P]lain and ordinary meaning (as defined by the terms of the claims themselves). For example, claim 27 of the '970 Patent [which mirrors claim 12, *see* Appx372 21:60-65] states that each navigation object defines a start position and a stop position and a specific filtering action .... In all claims, the start, stop, and filter elements that comprise the navigation object must be contained within the same object, file, or data structure." Appx266-267 (cleaned up).

- **"Configuration identifier"** – "Claim 12 of the '799 Patent requires the configuration identifier to be contained within the navigation object." Appx267.

- "**Object store**" – "[T]he collection that contains the navigation objects of at least one multimedia presentation." Appx268.

Numerous aspects of these instructions show that the navigation object's elements cannot be shared by lumping everything into a single, omnibus file that simultaneously constitutes the object store and the navigation objects.

First and foremost, the instructions point to the plain and ordinary meaning of the claim; for all of the reasons discussed above (at 52-62), the claim's plain meaning is that sharing is not allowed and that a navigation object must be distinct from the object store.

Furthermore, the instructions make clear that each navigation object must have its own distinct elements. "Each" navigation object must define not only the start and stop positions, but also a "specific" filtering action. And that is doubly true of the configuration identifier, which (the instruction explains) must be "contained" within the navigation object. If the configuration identifier is located elsewhere, it is not "contained within the navigation object," and the "elements that comprise the navigation object" would not "be contained within the same object, file or data structure." That is why ClearPlay is forced to take the implausible position that one single omnibus "file" simultaneously constitutes the object store and each of the plurality of

navigation objects. OB53. Again, that view contradicts the instructions' explicit recognition that the object store is distinct from the navigation objects "contained" therein. *Supra* 74-75.

## III. Alternatively, This Court Should Affirm JMOL On The '799 Patent Because The Accused Navigation Object Undisputedly Is Deleted Before The Method Completes.

Claim 12 of the'799 patent requires the same navigation object to exist throughout the performance of the method. ClearPlay's infringement theory, however, relies on an alleged navigation object that undisputedly is deleted before the method completes.

### A. The same navigation object must exist across the method's steps.

Claim 12's first step requires creating an object store with a plurality of navigation objects. Appx372 21:57-60. Subsequent steps concern one of those navigation objects. Appx372 22:3-12, 22:18-25. The only reasonable construction is that these later actions must concern the same navigation object—which therefore must exist until the method completes with respect to it.

The first such step is "continuously monitoring the position code" to "determine whether" content falls within the positions "defined by one of *the* navigation objects." Appx372 22:3-10 (emphasis added). The

definite article "the" refers back to one of the plurality of navigation objects placed within the object store earlier in the method. *See Tuna Processors v. Haw. Int'l Seafood*, 327 F. App'x 204, 210 (Fed. Cir. 2009) (collecting authorities); *supra* 54-55. All subsequent steps involve "*the particular* navigation object" as to which the initial determination was made. Appx372 22:10-13, 22:18-24 (emphasis added). For example, the claim recites "activating the filtering action assigned to the particular navigation object," Appx372 22:10-11, and "comparing the configuration identifier of the particular navigation object," Appx372 22:18-19.

Those repeated references to "the particular navigation object" plainly refer back to the same, singular navigation object. That is clear from the use of the definite article, *Tuna Processors*, 327 F. App'x at 210; *supra* 54-55, as intensified by the word "particular," which means "associated with a *single*" thing, *WARF*, 905 F.3d at 1348. That claim language likewise means that the same navigation object must exist throughout the method. You cannot activate the filtering action assigned to "*the particular* navigation object" if that navigation object no longer exists. That is especially so because the claim uses the past participle ("the filtering action *assigned* to")—instead of the past tense

("the filtering action *that was* assigned to")—which suggests a continuing state. *Compare Tuna Processors*, 327 F. App'x at 209 (past participle), *with Otte v. United States*, 419 U.S. 43, 49-50 (1974) (past tense).

Consistent with that understanding, the patent never describes switching from one navigation object to another midway through the process. Nor does it describe deleting navigation objects. Rather, it describes processing each of the object store's navigation objects through every step that recites a single navigation object. *Supra* 59.

**B. The accused announcement file undisputedly is deleted before the method completes.**

Under this continued-existence construction, ClearPlay's infringement theory fails as a matter of law. As discussed above (at 52-53), ClearPlay accuses AutoHop's announcement file as the navigation object. But ClearPlay could not rely on the announcement file for every step of the method because that file undisputedly is deleted partway through the process. As Minnick explained in unrebutted testimony, "the announcement file is deleted" before decoding, filtering, and playback—and thus before the decoding process determines any position code. Appx18354-18355; *see* Appx18528-18529.

Thus, for certain steps of the method that involve the position code—"continuously monitoring" and "activating the filtering action"—ClearPlay (through Feamster) had to switch from arguing that the announcement file is the navigation object to arguing that the segment bookmarks are the navigation objects. Appx18557-18559 (switching at "continuously monitoring" because steps reciting "the position code [are] working at the segment bookmark level"); *see* Appx16803-16804. Feamster testified that this switch was permissible because, in his view, the steps did not say that navigation-object elements "have to reside anywhere in specific in the system." Appx18558.

ClearPlay's sole argument for this switcheroo was claim differentiation from a different patent. *See* Appx16804-16806. ClearPlay argued that only claim 16 of the '970 patent requires a navigation object's continued existence, because claim 16 recites "comparing the position code *with a navigation object*," Appx339 21:38-40 (emphasis added), whereas claim 12 of the '799 patent merely recites "continuously monitoring the position code," Appx372 22:3-5. *See* Appx16805. The district court agreed, denying DISH's request for JMOL on that basis. Appx72-73 & n.159; *see* Appx16766-16768.

That argument simply ignores claim 12's language—the definite article "the," the adjective "particular," and the usage of the past participle—requiring the same navigation object to exist until the method completes with respect to it. *Supra* 76-78. "Claim differentiation is not conclusive," *Howmedica Osteonics v. Zimmer, Inc.*, 822 F.3d 1312, 1323 (Fed. Cir. 2016), and certainly not here, given that intrinsic evidence. Claim differentiation is especially weak because the claims are independent, differ in language in multiple respects, and stem from different patents. *See InterDigital Commc'ns v. ITC*, 601 F. App'x 972, 979 (Fed. Cir. 2015) (warning against "attempting to extract meaning by comparing independent claims that are distinguishable in other ways," especially across related patents).

For example, claim 16 does not recite an object store, and the examiner deemed claim 16 "broader in every aspect than claim 12," Appx27627-27628, issuing the former only after ClearPlay filed a terminal disclaimer, Appx27593; Appx27606. If the broader claim requires a navigation object subject to its steps to continue to exist until completion of the method, so must claim 12. *See* Appx27628 (examiner finding that "claim 16 of the instant application is *anticipated by* claim

12" (emphasis added)). The fact that the claims differ slightly in language with respect to the "continuously monitoring" step is immaterial: "It is not unusual that separate claims may define the [scope] using different terminology, especially where (as here) independent claims are involved." *Wi-Lan USA v. Apple*, 830 F.3d 1374, 1391 (Fed. Cir. 2016) (citation omitted).[15]

In short, Feamster's switch from the announcement file to the segment bookmarks depended "on an incorrect understanding of the claim[s]." *Homeland Housewares v. Whirlpool*, 865 F.3d 1372, 1378 (Fed. Cir. 2017) (citation omitted).

## CONCLUSION

For the foregoing reasons, the judgment should be affirmed.

---

[15] Moreover, ClearPlay ignores that language outside the "continuously monitoring" step—such as the "activating the filtering action" step, which the claims recite identically—also dictates that the same navigation object exist through the method's completion. *Supra* 76-78.

October 7, 2024

Respectfully submitted,

*/s/ Eric A. Shumsky*

Eric A. Shumsky
Robbie Manhas
ORRICK, HERRINGTON & SUTCLIFFE LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 339-8400

Edmund Hirschfeld
Alexandra Bursak
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019

Lauren A. Weber
ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, WA 98101

Brent O. Hatch
HATCH LAW GROUP, PC
22 East 100 South
Salt Lake City, UT 84111

G. Hopkins Guy III
BAKER BOTTS LLP
1001 Page Mill Road
Bldg. One, Suite 200
Palo Alto, CA 94304

Kurt M. Pankratz
BAKER BOTTS LLP
2001 Ross Avenue, Suite 900
Dallas, TX 75201

Ali Dhanani
Charles Stephen Maule
BAKER BOTTS LLP
910 Louisiana Street
Houston, TX 77002

Jamie R. Lynn
Lauren J. Dreyer
BAKER BOTTS LLP
700 K Street, NW
Washington, D.C. 20001

*Counsel for Appellees*

## CERTIFICATE OF COMPLIANCE

The brief complies with the type-volume limitation of Fed. Cir. R. 32(b)(1) because this brief contains 13,964 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in Century Schoolbook 14-point font.

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/ Eric A. Shumsky*
Eric A. Shumsky
*Counsel for Appellees*

## CERTIFICATE OF CONFIDENTIAL MATERIAL

This brief contains 2 unique words and numbers marked as confidential, not previously marked as confidential in this case's briefing.

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/ Eric A. Shumsky*
Eric A. Shumsky
*Counsel for Appellees*