**No. 23-2134**

**IN THE**

# United States Court of Appeals

**FOR THE FEDERAL CIRCUIT**

CLEARPLAY, INC.,

*Plaintiff-Appellant,*

*v.*

DISH NETWORK L.L.C., ECHOSTAR TECHNOLOGIES LLC,

*Defendants-Appellees,*

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH, CASE NO. 2:14-CV-00191-DN
U.S. DISTRICT JUDGE DAVID NUFFER

**NON-CONFIDENTIAL REPLY BRIEF OF PLAINTIFF-APPELLANT CLEARPLAY, INC.**

Joseph R. Re, *Principal Counsel*
Alan G. Laquer
Jeremiah S. Helm
Rhett D. Ramsey
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, 14th Floor
Irvine, CA 92614
(949) 760-0404

Michael K. Erickson
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, Suite 1400
Salt Lake City, UT 84111
(801) 532-1500

L. Richard Williams
Dennis K. Blackhurst
Abigail M. Terhune
**WILLIAMS BLACKHURST TERHUNE, PLLC**
701 North 44th Ave.
Phoenix, AZ 85008
(480) 429-3003

David J. Jordan
**FOLEY & LARDNER LLP**
95 South State Street, Suite 2500
Salt Lake City, UT 84111
(801) 401-8900

*Attorneys for Appellant ClearPlay, Inc.*

November 27, 2024

## CERTIFICATE OF INTEREST

Pursuant to Fed. Cir. R. 47.4(a), Counsel for Plaintiff-Appellant ClearPlay, Inc. certifies the following:

1. The full names of the parties represented by undersigned counsel in this case: ClearPlay, Inc.

2. The full names of all real parties in interest for the entities if different from the represented entities: None/Not Applicable.

3. The full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities: None/Not Applicable.

4. The law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities, but who have not already entered an appearance in this Court, are:

> Beus Gilbert McGroder PLLC: Leo R. Beus, David Neal,
> K. Reed Willis,
> Ray Quinney & Nebeker P.C.: Samuel C. Straight,
> Foley & Lardner LLP: David L. Mortensen,
> Kirton McConkie P.C.: James T. Burton, Brian D. Tucker, Joshua S. Rupp,
> Newman Jones PLLC: Daniel Joseph Anderson,
> The Jon Corn Law Firm: Lee M. Andelin,
> Mills + Wood Law PLLC: Thomas A. Connelly, and
> Ernst, Brown, and Draper PLLC.

5. The case titles and numbers of any case known to be pending in this Court or any other court or agency that will directly affect or be directly affected by this Court's decision in the pending appeal:

*VidAngel LLC v. ClearPlay Inc.,* 2:14-cv-00160 (D. Utah).

6. Information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees): None/Not Applicable.

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: November 27, 2024

By: */s/ Joseph R. Re*
Joseph R. Re

*Counsel for Plaintiff-Appellant*
*ClearPlay, Inc.*

# TABLE OF CONTENTS

**Page No.**

I. INTRODUCTION ........................................................................... 1

II. THE JURY APPLIED ITS REASONABLE VIEW OF "DIRECTLY DISABLE" AND SUBSTANTIAL EVIDENCE SUPPORTED INFRINGEMENT ........................................................... 3

A. The Jury Was Charged With Applying "Directly Disable" ........... 4

B. The JMOL Order Improperly Interpreted "Directly Disable" To Mean "Changed" ........................................................................ 5

C. The Jury's View of "Directly Disable" Was Reasonable .............. 7

1. Expert Testimony And Documents Supported the Jury's View ........................................................................... 7

2. DISH's Witnesses Supported the Jury's View .................. 10

3. DISH's Lamp Analogy Supports the Jury's View ............ 12

4. The Jury Instructions' Language Supported the Jury's View ........................................................................... 13

5. The Jury Was Entitled to Disregard Minnick's Testimony ................................................................... 15

D. DISH Usurps the Jury's Role by Disregarding Feamster's Testimony And Elevating Minnick's Testimony ......................... 16

III. THE JURY APPLIED ITS REASONABLE VIEW OF "NAVIGATION OBJECT" AND SUBSTANTIAL EVIDENCE SUPPORTED INFRINGEMENT ........................................................ 19

A. JMOL Relied on Constructions Different from the Instructions ............................................................................... 19

B. DISH Attempts to Reconstrue The "Navigation Object" Jury Instruction ......................................................................... 22

## TABLE OF CONTENTS
## (*cont'd*)

**Page No.**


C. The Jury's View of "Navigation Objects" Was Reasonable........ 23

D. Substantial Evidence Also Supports the Jury's Finding that DISH Infringed Under the Doctrine of Equivalents .................... 26

IV. DISH'S ALTERNATIVE GROUND FOR AFFIRMANCE ALSO FAILS ........................................................................................ 28

A. DISH Incorrectly Requires Claim Elements To Exist Through All Steps ....................................................................... 29

B. Not All Claim Steps Need Be Performed In The Listed Order........................................................................................ 30

C. Substantial Evidence Showed DISH Performed The Steps As Required By Claim 12 ............................................................ 31

V. CONCLUSION........................................................................... 32


**Rule 25.1(e)(1)(B) Statement:** The material omitted from pages 7-9 and 13-15 contains information that Appellees DISH Network LLC and EchoStar Technologies LLC designated as Confidential Business Information under the Protective Order in Case No. 2:14-cv-00191-DN.

## TABLE OF AUTHORITIES

**Page No(s).**

*Acumed LLC v. Stryker Corp.*,
483 F.3d 800 (Fed. Cir. 2007) .......... 4, 7, 25

*Amgen v. Sandoz*,
923 F.3d 1023 (Fed. Cir. 2019) .......... 14

*ATEN Int'l Co. v. Uniclass Tech. Co.*,
932 F.3d 1364 (Fed. Cir. 2019) .......... 23

*Augme Techs. v. Yahoo!*,
755 F.3d 1326 (Fed. Cir. 2014) .......... 27

*Avid Tech., Inc. v. Harmonic, Inc.*,
812 F.3d 1040 (Fed. Cir. 2016) .......... 5, 6

*Blanke v. Alexander*,
152 F.3d 1224 (10th Cir. 1998) .......... 12

*Dionex Softron GmbH v. Agilent Techs., Inc.*,
56 F.4th 1353 (Fed. Cir. 2023) .......... 31

*Hewlett-Packard Co. v. Mustek Sys., Inc.*,
340 F.3d 1314 (Fed. Cir. 2003) .......... 2, 4, 19

*Inguran, LLC v. ABS Global, Inc.*,
72 F.4th 1272 (Fed. Cir. 2023) .......... 18, 19

*Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*,
628 F.3d 1359 (Fed. Cir. 2010) .......... 21

*LifeNet Health v. LifeCell Corp.*,
837 F.3d 1316 (Fed. Cir. 2016) .......... 21

*Metro. Paving Co. v. Puckett*,
389 F.2d 1 (10th Cir. 1968) .......... 12

## TABLE OF AUTHORITIES
**(*cont'd*)**

**Page No(s).**

*MyMail, Ltd. v. ooVoo, LLC*,
934 F.3d 1373 (Fed. Cir. 2019) .................................................................. 28

*Nuance Commc'ns v. Abbyy USA Software House*,
813 F.3d 1368 (Fed. Cir. 2016) .................................................................. 21

*O2 Micro Int'l v. Beyond Innovation Tech.*,
521 F.3d 1351 (Fed. Cir. 2008) .................................................................. 21

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
904 F.3d 965 (Fed. Cir. 2018) ............................................................. 4, 5, 25

*PPG Indus. v. Guardian Indus. Corp.*,
156 F.3d 1351 (Fed. Cir. 1998) .............................................................. 4, 25

*Tuna Processors v. Haw. Int'l Seafood*,
327 F. App'x 204 (Fed. Cir. 2009) ........................................................ 29, 30

*Uniloc USA, Inc. v. Microsoft Corp.*,
632 F.3d 1292 (Fed. Cir. 2011) .................................................................. 21

*United States v. Williams*,
898 F.3d 1052 (10th Cir. 2018) .................................................................. 18

*Versata Software, Inc. v. SAP Am., Inc.*,
717 F.3d 1255 (Fed. Cir. 2013) .............................................................. 5, 25

*VLSI Tech. v. Intel*,
87 F.4th 1332 (Fed. Cir. 2023) .................................................................. 26

### Other Authorities

U.S. Const. Amend. VII ................................................................................ 4

Fed. R. Civ. P. 32 .......................................................................................... 35

Fed. R. Civ. P. 50 ...................................................................................... 11, 20

# I. INTRODUCTION

As ClearPlay explained in its Opening brief, the JMOL improperly reinterpreted the jury instructions and disregarded substantial evidence supporting the verdict. DISH argues that the district court was permitted to apply its interpretation of the instructions. But that usurped the jury's fact-finding role in applying the instructions. DISH cannot justify the JMOL's disregard for the jury's interpretation and resulting verdict, unless it satisfies the heavy burden of showing that the JMOL's interpretation was the only reasonable one. DISH cannot meet that burden because the instructions left ample room for multiple reasonable interpretations on issues including what constitutes "direct disabling" and whether navigation objects may share some of their elements within a single file.

DISH relies on the JMOL holding that ClearPlay "broaden[ed] its patent claims beyond their scope." Not so. ClearPlay diligently adhered to the claim language and instructions provided to the jury. In contrast, DISH argues for JMOL using its own narrow interpretations of the claims and instructions, even though they are not inherent in either. Even the district court declined DISH's request to include such interpretations in the jury instructions, but erred by treating them as inherent on JMOL. Appx05468-71, Appx00025-27, Appx00031-32.

DISH's Introduction and Statement of the Case seek to distract this appeal from its true issue: whether substantial evidence supported the jury's verdict that

DISH infringed the claims as construed in the jury instructions. DISH repeats irrelevant invalidity and damages arguments the jury rejected. Response 1, 2, 4-6, 13-15. None of DISH's arguments concern the roles of the court and the jury, and how those roles are divided in a patent case once the court issues jury instructions.

Substantial evidence supported the jury's application of the instructions to find infringement. On JMOL, *Hewlett-Packard* and its progeny required the district court to limit its analysis to those instructions. Opening 32-39. Because those instructions are not challenged on appeal, that same analysis applies here.

DISH argues that the instruction's language of "directly disable" requires "acting on" the navigation object such that a change is made to the navigation object itself. While that is one way to directly disable, a jury could reasonably conclude it is not the only way. Testimony, the jury's familiarity with that everyday language, the silence of DISH's non-infringement expert, and DISH's own lamp analogy all support the jury's rejection of that narrow interpretation. Indeed, to find no infringement on JMOL, the district court had to narrow the construction from what the jury was instructed. Appx00064-65.

Substantial evidence also supported the jury's finding that DISH satisfied the '799 patent's "navigation object" claim terms literally and under the doctrine of equivalents. Opening 51-66. DISH argues that its segment bookmark elements do not satisfy a "single-object, no-sharing construction." Response 26. But the jury

instructions were not limited to a "single object," and instead allowed elements "within the same object, ***file***, or data structure."[1] Appx00266-67. DISH's elements are undisputedly within the same ***announcement file***. Opening 55-60. Also, the jury instructions did not prohibit sharing those elements. Finally, in the alternative, DISH seeks to further narrow the patent by inviting this Court to construe a claim term in the first instance. The Court should decline that invitation.

## II. THE JURY APPLIED ITS REASONABLE VIEW OF "DIRECTLY DISABLE" AND SUBSTANTIAL EVIDENCE SUPPORTED INFRINGEMENT

ClearPlay's Opening Brief addressed both of the JMOL's grounds for non-infringement of the '970 patent: "providing for disabling" (Opening 32-37) and "playing … and ignoring… any disabled" (Opening 37-51) navigation objects. DISH responded to only the first ground, thus conceding the second.

The court instructed the jury: "It is my role, as judge, to define the terms of the Asserted Claims and it is your role, as the jury, ***to apply*** my definitions of the terms I have construed to the issues that you are asked to decide in this case." Appx19832-33. The jury was thus tasked with applying ***its*** understanding of the instructions to decide whether DISH "directly disabled" navigation objects. On JMOL, DISH convinced the district court to accept DISH's preferred view of the

[1] All emphasis added unless noted otherwise.

instructions, thereby replacing the jury as the trier of fact. That result runs afoul of the Seventh Amendment and this Court's precedent.

## A. The Jury Was Charged With Applying "Directly Disable"

The jury was instructed: "an action must ***directly disable*** a navigation object so that its filtering action is ignored, as opposed to disabling something other than the navigation object that results in the navigation object's filtering action being ignored." Appx00267. The court held that ClearPlay presented "evidence that DISH's segment bookmarks contain the required elements of a navigation object." Appx00063. Applying its view of the above instruction, the jury determined that DISH "directly disables" segment bookmarks.

On JMOL, the "verdict must be tested by the charge actually given and by giving the ordinary meaning of the language of the jury instruction." *Hewlett-Packard Co. v. Mustek Sys., Inc.*, 340 F.3d 1314, 1321 (Fed. Cir. 2003). A claim construction need not "purge every shred of ambiguity," and the "resolution of some line-drawing problems … is properly left to the trier of fact." *Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 806 (Fed. Cir. 2007). Thus, "after the court has defined the claim with whatever specificity and precision is warranted by the language of the claim and the evidence bearing on the proper construction, the task of determining whether the construed claim reads on the accused product is for the finder of fact." *PPG Indus. v. Guardian Indus. Corp.*, 156 F.3d 1351, 1355 (Fed. Cir. 1998); *see*

*also Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 972 (Fed. Cir. 2018) (when a term is "not unambiguously defined … the jury could have properly concluded that the terms … left open the possibility" of encompassing the accused feature); *Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1262 (Fed. Cir. 2013) ("Whether 'computer instructions' can include source code thus becomes a pure factual issue.").

The jury's verdict may not be discarded unless the alternate view of the term's meaning is "the only reasonable view." *Avid Tech., Inc. v. Harmonic, Inc.*, 812 F.3d 1040, 1048 (Fed. Cir. 2016). Thus, DISH "has the difficult task of showing, based simply on the words" that the only reasonable view of "directly disable" includes the requirements imposed on JMOL. *Id.*; *see Versata Software*, 717 F.3d at 1262 ("high standard needed to disregard the jury's fact-finding function on this issue."). As explained in ClearPlay's Opening Brief, substantial evidence supported the jury's infringement verdict under a reasonable view of the instructions. Opening 32-39.

**B. The JMOL Order Improperly Interpreted "Directly Disable" To Mean "Changed"**

The JMOL applied DISH's interpretation of the jury instructions to hold that "directly disable a navigation object" means "change a navigation object." It then determined the testimony of ClearPlay's expert Dr. Feamster did not support infringement because it "evidences that the segment bookmark has not ***changed*** or been disabled at all." Appx00070. The JMOL order also described this narrower

interpretation of "directly disable" as requiring "some action ***is taken on*** one or more of DISH's segment bookmarks." Appx00065.

DISH seeks to justify the court's application of its interpretation. *See* Response 25 ("the accused navigation objects … ***never change***"), 28 ("disabling must ***operate on*** a particular navigation object"), 30 ("leaving ***untouched*** the claimed navigation objects—the segment bookmarks"), 36 ("no evidence showed AutoHop ***acting on*** or disabling those bookmarks"). DISH accuses the jury of "disregarding the jury instructions" by applying its interpretation rather than DISH's. *Id.* 50. But DISH cannot show these requirements are "the only reasonable view" of the instruction, as it must to disregard the jury's interpretation. *Avid Tech.*, 812 F.3d at 1048.

The jury instructions clarify that a disabling action "must directly disable a navigation object ***so that its filtering action is ignored***," but do not require that an action be "taken on" the navigation object to "change" it, as the JMOL order requires. DISH argues the JMOL construction "simply plug[ged] the segment bookmarks into the instruction as the accused navigation objects." Response at 32-33. Not so. As DISH's own table shows, the JMOL narrowed the instruction by (1) deleting the "so that" phrase, (2) adding "acting on" something else to the negative excluded phrase, and (3) adding "indirectly affects" to the negative excluded phrase.

DISH argues that this Court's precedent compels the JMOL's reinterpretation. Response 32-33 (citing three cases). But each of those cases involved a clarification ***inherent*** in the original construction. In contrast, the JMOL's interpretation of the jury instructions was not inherent to those instructions.[2]

## C. <u>The Jury's View of "Directly Disable" Was Reasonable</u>

Because the instruction did not "purge every shred of ambiguity" regarding "directly disable," the jury properly resolved the remaining line-drawing problem and determined that DISH infringed. *See Acumed LLC*, 483 F.3d at 806. The JMOL order recognizes that changing something "within a navigation object" is merely "one way" to disable it. Apppx00061. The jury was therefore free to apply its interpretation that DISH disabled navigation objects in another way.

### 1. <u>Expert Testimony And Documents Supported the Jury's View</u>

Substantial evidence demonstrated that DISH's "code [redacted]" and "code [redacted]" variables acted as switches to directly disable segment bookmarks (navigation objects). Feamster did not use the phrase "directly disable" because the court added that phrase to the jury instruction only after ClearPlay rested its case. Appx17091.

---

[2] DISH argues "the court instructed the jury with the same construction it employed at summary judgment, which ClearPlay disregarded by advancing theories directed to disabling all skipping functionality in AutoHop." Response 33-34 n.5 (citing Appx00026; Appx16559-60). But much of the summary judgment and *limine* rulings were not part of the jury instructions. Moreover, ClearPlay never argued that AutoHop was disabled "as a whole," let alone that such disabling would satisfy claim 12.

Instead Feamster testified that the “code [redacted]” variable acts like a “switch” that gets “flipped.” Appx18521-18522. If users select “Yes” at the pop-up message, “the AutoHop bookmark” file “will be opened and will be searched for the beginning and end of segments to skip.” Appx23807. DISH uses “the Segment Bookmarks to skip [commercials],” as DISH’s “code [redacted] II” technical document explains with reference to its source code. Appx23920, Appx23930.[3] But when users select “No Thanks,” the “code [redacted]” variable switches to “code [redacted],” indicating that “those segment bookmarks won’t be [used]” and therefore “are disabled for purposes of skipping the commercial.” Appx18522. Subsequently, during playback, if AutoHop determines the “[redacted]” variable is switched to “code [redacted],” AutoHop does not use the segment bookmarks to skip. *Id.*

Feamster also described the “code [redacted]” as a variable “indicat[ing]” whether segment bookmarks should be used during playback. Appx18524-18525. If “code [redacted]” is switched to “code [redacted],” the segment bookmarks are enabled and used to skip. But if the user fast-forwards, this variable switches to a “different value,” which indicates that the “pair of segment bookmarks that would normally do the skip” are “disabled until the set-top box” returns to “code [redacted].” *Id.* Subsequently,

---

[3] DISH defends the court’s rejection of DISH’s technical documents, including the one cited above. Response 48. But as ClearPlay explained, the jury was free to consider these documents in conjunction with all the evidence. Opening 46-50. Unlike *Plastic Omnium*, which DISH cites, the DISH technical documents analyze and explain the source code’s function. Opening 33, 46-48.

during playback, if AutoHop determines the code [redacted]" variable is not "code [redacted]," AutoHop does not use the segment bookmarks to skip. *Id.* Thus, Feamster testified that selecting "No Thanks" or fast-forwarding, disables segment bookmarks. Appx18522, Appx18523; *see* Opening 34.

DISH argues the "providing for disabling" limitation requires "selectively," "tailored," or "buffet-style" disabling (Response 1, 8, 29-31), but no such requirement is in the claims or the jury instructions. The claims specify "providing for disabling" "***one or more***" navigation objects, and the instructions do not impose a requirement for buffet-style disabling. Appx00267, Appx00340.

DISH argues ClearPlay "collapses the distinction between separate limitations: 'disabling' and 'ignoring.'" Response 25. But, as shown above, switching the "code [redacted]" or "code [redacted]" variables first ***disables*** the segment bookmarks from being used. Appx18518-18519, Appx18525-18526. Later, when playback reaches a commercial, if those variables are switched off, AutoHop then "***ignor[es]*** the skip filtering action." Appx18521-18532, Appx18525-18526.

DISH argues ClearPlay has shown only disabling "skipping functionality" rather than disabling segment bookmarks. Response 25. But, as discussed, AutoHop's skipping functionality is disabled as a result of its segment bookmarks being disabled. Feamster testified segment bookmarks are "for the express purposes of skipping" and are what DISH uses to "perform skipping." Appx18657-58. The

jury could thus reasonably infer that disabling segment bookmarks (which "perform skipping") and disabling "skipping functionality" are two sides of the same coin.

### 2. DISH's Witnesses Supported the Jury's View

The testimony of DISH's invalidity expert, Dr. Reader, also supported the jury's interpretation. Reader testified that he "found the disabling limitation" in prior-art Patent No. 6,337,947 ("Porter"). Appx19627-36. Reader pointed to a "plurality of editing parameters 26" as Porter's navigation objects (Appx19631-35), and concluded they are disabled when a user "disable[s] the selective editing circuit 12 such that the signal source 24 is presented without editing or censoring." Appx19635-36 (citing Appx27559 4:36-41).

Reader never testified, and Porter never disclosed, that this disabling limitation required changing the editing parameters. Appx19635-38. It was therefore reasonable for the jury to infer that direct disabling does not require such changes to the navigation object itself. Furthermore, Reader testified that disabling included "simply turn[ing] off the editing circuit of Porter in order to discontinue any filtering." Appx19655-56. Thus, the jury could reasonably infer that turning a single switch off directly disables all navigation objects, even if the objects themselves are not changed. *See also* Appx19780-81 (ClearPlay's validity expert distinguishing Porter on other grounds).

DISH's non-infringement expert, Dr. Goldberg, never opined that DISH does not directly disable segment bookmarks. No fact witness testified to that either. DISH never cross-examined Feamster on whether the disabling was "direct," despite DISH seeking to have the construction so narrowed. DISH now relies on "disabling something other than the navigation object." But consistent with Goldberg not disputing the issue, DISH also never argued that distinction to the jury.

DISH accuses ClearPlay of burden-shifting. Response 40 n.8, 51. But in determining its reasonable view of "directly disable," the jury was entitled to consider the extent to which the parties and experts disputed that issue. Once the jury made that determination, the JMOL standard both defers to the jury's determination and places the burden on DISH to show otherwise.

DISH argues the court's characterization of its post-verdict order as being under Rule 50(a) excuses that approach. Response 49 (distinguishing *Stroup* as "address[ing] a Rule 50(b) motion"). But Rule 50(a) applies only "during a jury trial," while 50(b) is for "renewing the motion after trial." Rule 50(b) thus governs the JMOL order regardless of the court's characterization. And under Rule 50(b), the JMOL incorrectly restricted the evidence considered. Opening 50-51. Indeed, the jury was instructed when "determining whether any disputed fact has been proven," it should "consider the testimony of ***all*** witnesses, regardless of who may have called them, and ***all*** exhibits." Appx19826.

### 3. DISH's Lamp Analogy Supports the Jury's View

The jury was free to interpret "directly disable" as covering acts which are the intended, proximate cause of the disabling. DISH admits as much through its lamp analogy. DISH conceded that "[y]ou can directly disable a lamp by turning off its switch, but no one would say you 'turned off a lamp' by cutting power to the house." Response 32. DISH's analogy demonstrates degrees of directness. *See* Appx19688 (DISH arguing question of directness addresses whether power has "been turned off at a higher level").

Turning off a lamp's switch has a certain degree of directness. Taking a hammer to the lamp's bulb is more direct. Cutting power to the house is less direct. Losing power to the entire city is even less direct. But where to draw that line presents an issue of fact for the jury. *See Blanke v. Alexander*, 152 F.3d 1224, 1234 (10th Cir. 1998) (instructing jury that "[d]irect cause, as used in these instructions, means a cause which, in a natural and continuous sequence, produces injury and without which the injury would not have happened."); *Metro. Paving Co. v. Puckett*, 389 F.2d 1, 4–5 (10th Cir. 1968) (whether there was an "intervening act which is a direct, sufficient and proximate cause of the injury" is ordinarily "a question … of fact for determination by a jury."). Juries in patent cases likewise determine whether an infringing act satisfies a claim requirement that something be "direct." *See* Opening 49 (citing cases). As shown above, the jury could have reasonably

code code

concluded that the "[redacted]" and "[redacted]" variables function like light switches that directly disable the segment bookmarks from being used to skip commercials.

DISH argues that segment bookmarks are not directly disabled when "nothing happens to the segment bookmarks themselves." Response 25. But the jury was not bound to apply any particular dictionary definition of "direct" as DISH argues. *See* Response 31. And the court never instructed the jury with DISH's dictionary definition. Response at 38, 43. Indeed, when a lamp is directly disabled by its wall switch, the lamp itself is not changed. Similarly, a lost credit card can be directly disabled without any action on the card itself.

### 4. <u>The Jury Instructions' Language Supported the Jury's View</u>

DISH argues that the jury instruction's so-called "Disabling Exclusion" supports its view of "directly disable." Response 32-35. That part of the instruction excluded "disabling something other than the navigation object that results in the navigation object's filtering action being ignored." Appx00267. But ClearPlay did not rely on disabling something other than the segment bookmarks. Opening 36-37.

DISH nonetheless argues that ClearPlay "disregarded" the Disabling Exclusion. Response 24. But the jury was not compelled to find DISH disabled something other than a segment bookmark to trigger the Disabling Exclusion. Indeed, DISH did not argue that to the jury, and still never clearly identifies "something other" than a segment bookmark that DISH supposedly disables to

trigger the Disabling Exclusion. Feamster's testimony and the source code showed
code code
that the "[redacted]" and "[redacted]" variables continued performing their purpose after being set. Appx18483-93; Appx20618-21. Thus, it was reasonable for the jury to conclude that those variables were not "disabled" and DISH did not trigger the Disabling Exclusion.

Additionally, the Disabling Exclusion recites "disabling … ***that results in*** the navigation object's filtering action being ignored." The preceding "Indicating Condition" recites "directly disable a navigation object ***so that*** its filtering action is ignored." The jury was entitled to conclude that "so that" describes an intended consequence, while "that results in" describes an unintended consequence. *See Amgen v. Sandoz*, 923 F.3d 1023, 1031 (Fed. Cir. 2019) (citation omitted) (different terms "presumed to have different meanings").

That difference in language supported the jury viewing directness in terms of degrees and based on factors such as intent. DISH ignores that difference and incorrectly asserts that "ClearPlay's arguments depend on erroneously re-interpreting the jury instruction to mean that any action that somehow results in a commercial not being skipped amounts to 'directly disabling' navigation objects." Response 35, 38. Not so. ClearPlay showed infringement based on DISH providing users the option of intentionally selecting "No Thanks," which satisfies the "so that" language. ClearPlay did not rely on evidence of unintentionally affecting whether

commercials are shown, such as unplugging the system, that might fall within the “results in” exclusion. The jury could have reasonably relied on the instruction’s intent-based language and found that users select “No Thanks” “so that” commercials are not skipped—not that it “somehow results in” commercials not being skipped.

### 5. <u>The Jury Was Entitled to Disregard Minnick’s Testimony</u>

DISH argues that Minnick testified the “No Thanks” feature disables AutoHop “as a whole.” Response 38 (citing Appx18382). The jury was entitled to disregard that portion of Minnick’s testimony in favor of other evidence.

code

Feamster testified that when “[redacted]” is set, “AutoHop remains enabled” and “Segment bookmarks are disabled for the playback of that particular show.” Appx18518-20; Appx18727; Appx18733; Opening 35. He testified that AutoHop software continues to run on the Hopper after a user selects “No Thanks,” and allows viewers on other, dependent devices to simultaneously watch other shows while skipping commercials. APPX19518-19. Minnick’s own testimony also showed that DISH did not disable AutoHop “as a whole.” He admitted that, when a user fast-forwards into a commercial, “AutoHop software is running underneath doing the processing that it always does.” APPX18347. He demonstrated by fast-forwarding into a commercial, showing that the commercial was not skipped. Then he rewound out of the commercial and pressed “play,” showing that the commercial was skipped.

Appx18346-18348. That showed the jury that AutoHop had not been disabled as a whole. Moreover, disabling AutoHop "as a whole" was not part of the jury instructions.

### D. DISH Usurps the Jury's Role by Disregarding Feamster's Testimony And Elevating Minnick's Testimony

DISH argues that Feamster's relevant testimony was excluded, and the sole evidence regarding DISH's disabling was Minnick's testimony. Response 39-42. DISH is wrong on both accounts. For the exclusion, DISH relies on the JMOL's citation to a curative jury instruction. Appx00066 (citing Appx19458-59 (March 8, 2023 Instruction)). The instruction identified no excluded testimony, and DISH did not move or object to exclude any testimony based on the instruction. Instead, that instruction set forth certain undisputed facts. Response 41-42 (citing Appx19458-59); *see* Opening 9-10, Appx00307.

DISH falsely argues that "the court's curative instruction memorialized ClearPlay's admission that AutoHop 'must be affirmatively enabled.'" Response 41 (quoting Appx19458). Whether AutoHop "must be affirmatively enabled" was ***not*** part of any agreement. Instead, that was the court's description of what the parties ***disputed***. Appx19458. After acknowledging that dispute, the court introduced the parties' narrow agreement: "But there is ***no*** dispute between the parties as to how the Hopper AutoHop ***user interface*** actually works." *Id.*

DISH also incorrectly asserts that the court excluded Feamster's testimony on this issue because, in DISH's view, it was directed to "the wrong code." Response 40. But the court expressly let the jury determine whether the code Feamster analyzed was relevant. Appx00307.

DISH wrongly concludes that Minnick's testimony was the "sole evidence" on which a jury could rely. Response 42. DISH argues that "[a]ny factual issue disappeared when ClearPlay conceded that 'there's really no dispute about how these ['Yes' and 'No Thanks'] ***buttons*** operate." *Id.* 41 (citing Appx19451). But any agreement about the operation of the user interface does not resolve the dispute about ***how*** the software then ***implements*** enabling or disabling segment bookmarks such that commercial skipping takes place or does not. Indeed, DISH relies only on Minnick's testimony about the operation of the buttons. Appx19102-3, Appx18343, Appx19055-56.

DISH relies on the district court's JMOL holding that "If the user does not make a selection of 'Yes' or 'No Thanks' from the pop-up message, the system will time out after a few minutes, and return to live TV." Response 42 (citing Appx00066). The JMOL continued that "Dr. Feamster testified contrary to this at trial, but the parties agreed to the correct statement of the function of the AutoHop interface, and the jury was instructed to disregard any evidence or statements to the

contrary." Appx00066. But the JMOL did not identify any testimony as excluded for deviating from that instruction. *Id*.

DISH argues that the JMOL's interpretation of the curative instruction controls because "this Court must 'give deference to the district court's interpretation of its own order.'" Response 42 (citing *United States v. Williams*, 898 F.3d 1052, 1055 (10th Cir. 2018)). However, a jury instruction is much different from the order in *Williams*, and because the curative instruction did not identify excluded testimony, the jury was free to draw inferences and apply its understanding of that instruction. Regardless, the JMOL's interpretation of the instruction was not reasonable, conflicted with the parties' stipulation and the jury instruction, and thus was an abuse of discretion that also improperly drew inferences against ClearPlay. Opening 21, 44. And this Court does not give unwarranted deference to a court's interpretation of an order that "rewrite[s] it after unintended consequences have given rise to regrets." *Inguran, LLC v. ABS Global, Inc.*, 72 F.4th 1272, 1277-81 (Fed. Cir. 2023). Even if the court regretted its jury instructions, it cannot change them by reinterpreting them post-verdict. *See* Appx20002-20003, Appx20837.

The JMOL also made improper factual findings based on its misinterpretation of its curative instruction. It incorrectly held that the "undisputed evidence based on the parties' stipulation also demonstrates that when 'No Thanks' is selected on the pop-up message prior to playback, AutoHop is not enabled for playback of the

selected recording." Appx00066. The JMOL cited no evidence, disputed or otherwise, supporting that finding. *Id.* Indeed, substantial evidence supported the jury finding to the contrary, namely that at least some AutoHop software remains enabled. Opening 32-39. Thus, this Court should reinstate the infringement verdict on the '970 patent.

## III. THE JURY APPLIED ITS REASONABLE VIEW OF "NAVIGATION OBJECT" AND SUBSTANTIAL EVIDENCE SUPPORTED INFRINGEMENT

Substantial evidence supported the jury's verdict that DISH infringed the '799 patent both literally and under the doctrine of equivalents. That "verdict must be tested by the charge actually given and by giving the ordinary meaning of the language of the jury instruction." *Hewlett-Packard*, 340 F.3d at 132. DISH's brief ignores *Hewlett-Packard* entirely and argues for JMOL "regardless of the jury instruction," asserting it is "beside the point" whether the JMOL order applied a construction that "departed from the jury instruction." Response 63. *Hewlett-Packard* and its progeny refute DISH's argument; the jury instructions control. Moreover, even under the JMOL's construction, substantial evidence would support the jury's finding of infringement under the doctrine of equivalents.

### A. JMOL Relied on Constructions Different from the Instructions

On JMOL, the court applied what DISH called a "single-object, no sharing construction." Response 26. But that construction was never given to the jury.

Moreover, it was substantively different from the instruction. It ***removed*** the language that allowed the elements of the navigation objects to be contained in "the same object, file, or data structure." *Compare* Appx00074 (JMOL) *with* Appx00266-67 (instructions). The JMOL's "single-object, no-sharing" construction also replaced the instruction's reference to "***a*** start position and ***a*** stop position and ***a*** specific filtering action" to instead require "***its own*** start position, stop position, and filtering action, and contain ***its own*** configuration identifier." *Id.*

The JMOL also failed to apply the jury instruction construing "defines" to encompass "specifying" something, not necessarily containing it. *See* Appx00266-67 ("defin[e/ed/es/ing]" means "assign or specify [a start position, stop position, or filtering action]."). Multiple navigation objects may therefore specify the same element. Thus, the jury could have reasonably interpreted the instruction differently than the JMOL and DISH, and found infringement because the navigation object's elements were within the same object, file, or data structure.

DISH argues that the court "consistently" construed "navigation object" because it "applied the single-object construction ***before*** trial and ***after***." Response 51-52; *see also* 53 (discussing summary judgment, proposed fact findings, and Rule 50(a) filings). But the court did ***not*** instruct the jury with that construction ***during*** trial. And DISH did not object to the jury instruction for "navigation object." *See* Appx14979-15032 (DISH's objections to proposed final jury instructions).

DISH argues for JMOL "regardless of the jury instruction." Response 63. It relies on *O2 Micro Int'l v. Beyond Innovation Tech.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008), to argue that "[t]he district court had the obligation to ***apply*** the proper construction." Response 63. But *O2 Micro* addresses the court's obligation to ***construe*** a disputed claim term, ***not*** to ***apply*** the resulting construction to the accused device. That is a "factual question[] relating to the test for infringement and not the legal inquiry of the appropriate scope." *Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*, 628 F.3d 1359, 1376 (Fed. Cir. 2010) (refusing to apply *O2 Micro*).

Applying jury instructions to the accused device is the sole responsibility of the jury. *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1302 (Fed. Cir. 2011). DISH is not contesting the jury instructions, which applied the plain meaning of "navigation object" as defined by the claim language—as the parties stipulated. Appx00266-67. A party "dissatisfied with its own proposed construction" that subsequently "sought a new one does not give rise to an *O2 Micro* violation." *Nuance Commc'ns v. Abbyy USA Software House*, 813 F.3d 1368, 1373 (Fed. Cir. 2016). Indeed, a party's "discontent with the agreed-upon construction" or its application during trial "is not sufficient to give rise to an *O2 Micro* violation." *LifeNet Health v. LifeCell Corp.*, 837 F.3d 1316, 1324 (Fed. Cir. 2016).

## B. DISH Attempts to Reconstrue The "Navigation Object" Jury Instruction

DISH relies on the instruction of "object store" to argue navigation objects cannot share elements. Response 51. But the jury was instructed that "object store" is "[t]he collection that contains the navigation objects of at least one multimedia presentation." Appx268. The jury was also instructed: "the start, stop, and filter ***elements*** that comprise the navigation object must be ***contained within the same*** object, ***file***, or data structure." Appx00266-67.

The parties stipulated during *Markman* that "navigation object" has its "plain and ordinary meaning (as defined by the terms of the claims themselves)." Appx03144, Appx03157. DISH reneged on that stipulation and was able to narrow the "navigation object" claim construction. Appx03336 (*Markman*), Appx20723-34 (summary judgment). But DISH could not convince the court to include the "single-object, no sharing construction" in the jury instruction. Appx14927-28 (proposed instructions).

At trial, DISH again attempted to narrow the definition of "navigation object" by eliciting improper claim-construction testimony from its expert, over ClearPlay's objections. Appx19430-31. Only after the jury's verdict did DISH succeed when it obtained JMOL. Appx16766-70.

DISH now defends the JMOL's narrowing construction. Response 51-52. But that "single-object, no sharing" interpretation should be rejected because it was

not inherent in the jury instructions. DISH argues that ClearPlay is "bound by" the ***court's*** post-verdict understanding of "plain and ordinary meaning" because the parties stipulated "plain and ordinary meaning" applied. Response 64. But ClearPlay never agreed to the court's interpretation. Moreover, DISH stipulated that the "plain and ordinary meaning" was "defined by the terms of the claims themselves," and not by lexicography, disclaimer, or anything else. Appx03144; Appx03157; Appx00266-67.

DISH now asks this Court to deviate from the stipulated construction and instead look beyond the claim language to find what amounts to lexicography or disclaimer. Response 57-62. DISH already raised such arguments to the jury over ClearPlay's objection when eliciting expert testimony on claim construction. Appx19430-31. Though it was "improper for an expert witness to testify before the jury regarding claim construction," *ATEN Int'l Co. v. Uniclass Tech. Co.*, 932 F.3d 1364, 1370 (Fed. Cir. 2019), the jury nonetheless applied the jury instructions and found infringement.

### C. The Jury's View of "Navigation Objects" Was Reasonable

DISH argues to interpret the jury instruction to mean "sharing is not allowed and that a navigation object must be distinct from the object store." Response 75. But that was for the jury to determine in applying its reasonable view of the instructions.

DISH argues it would be "a bizarre result" if "the same file would serve simultaneously as the 'particular navigation object,' the 'plurality of navigation objects,' and the 'object store' that ***contains*** the plurality of objects." Response 51; *see also* 73-76. But the jury learned that DISH's announcement file contains the navigation objects' elements and other content, just as the instructions permit. Appx20410-27 (announcement file), Appx18249-51. And the jury instructions permit navigation objects to share elements within the same file. *See* Opening 55-66.

DISH concedes, as it must, that the JMOL and this appeal apply the same construction given to the jury. Response 46. But DISH devotes ten pages to its claim-construction analysis that reconstrues the claims and ignores the language of the instruction. Response 52-62. DISH's next ten pages argue no substantial evidence of infringement under its narrow interpretation of the jury instruction. Response 63-73. Because that narrow interpretation is improper, that argument is irrelevant.

Even when DISH claims to address the sufficiency of evidence under the jury instructions, it reiterates its argument for the "single-object, no sharing" construction based on orders not before the jury. Response 73-76. DISH argues "the instructions make clear that each navigation object must have its own distinct elements." *Id.* DISH also argues that "'[e]ach' navigation object must define … a 'specific'

filtering action," and "the configuration identifier … must be 'contained' within the navigation object." *Id.* DISH interprets the instruction's reference to "specific" and "contain" to instead mean "unique" in order to exclude sharing. But that meaning is not inherent—particularly in the digital context—and it was reasonable for the jury to apply its own view. *See Acumed*, 483 F.3d at 806; *PPG Indus.*, 156 F.3d at 1355; *Power Integrations*, 904 F.3d at 972; *Versata Software*, 717 F.3d at 1262.

Substantial evidence supported the jury's finding that DISH literally infringed based on a reasonable view that "specific" and "contain" do not preclude sharing. Opening 55-59. Moreover, substantial evidence confirmed that each navigation object within the announcement file contains its own filtering object, established by the positional value location of an "end offset." Opening 58; Appx18462-65. Whether Feamster offered inconsistent testimony on this issue was for the jury to decide, not the district court on JMOL. *See* Appx00054 n.88 (dismissing Feamster testimony).

DISH blames ClearPlay for differences between pre-trial orders and the jury instructions. Response 52, 63-64. But DISH's finger-pointing is unwarranted because it agreed to the jury instructions and is not challenging them on appeal. Appx14979-15032 (DISH not objecting to "navigation object" instruction).

### D. Substantial Evidence Also Supports the Jury's Finding that DISH Infringed Under the Doctrine of Equivalents

The jury found that DISH infringed the '799 patent also under the doctrine of equivalents. Feamster's testimony and other substantial evidence supported that conclusion. Opening 52-66. DISH makes three arguments against finding equivalents. First, DISH argues that Feamster did not provide "particularized testimony" explaining "why" there was equivalence. Response 67. But DISH acknowledges that Feamster testified that a computer programmer understands that objects in object stores may be shared, and thus configuration identifiers and filtering objects need not be unique. Response 68 (*citing* Appx18556-18557). The jury could properly evaluate that equivalence.

Whether a piece of information appears once or multiple times is not a highly complex technical concept. Thus, Feamster's explanation of equivalence was appropriately particularized for the issue. DISH's reliance on *VLSI Tech. v. Intel*, 87 F.4th 1332, 1343-44 (Fed. Cir. 2023), is misplaced. *VLSI* addressed microprocessors with multiple programmable clock controllers changing frequencies amongst their multiple cores. And when asked whether the results were the same, the expert testified "Yes. No, not really." *Id.* Feamster's testimony was more helpful and more detailed evidence on a simpler issue. Opening 60-66. And notably, DISH can point to no information the jury lacked but needed to assess equivalence.

Second, DISH argues applying the doctrine of equivalents would "effectively read out" the "the single-object approach's restriction against sharing elements across navigation objects," which DISH claims is a "meaningful claim limitation.'" Response 70. DISH argues "[t]hat elements are not shared matters structurally because it helps preserve the distinction between limitations that define the claimed system's organization." *Id.* But that prohibition against sharing is ***not*** in the jury instructions.

DISH relies on *Augme Techs. v. Yahoo!*, 755 F.3d 1326, 1335 (Fed. Cir. 2014). Response 71. But the *Augme* construction specifically excluded an accused feature. The construction here recites a configuration identifier that is "contained within the navigation object." The jury was free to find equivalents where multiple navigation objects within a file share the same configuration identifier, and thus each contain it. The construction of "navigation object" does not expressly exclude that arrangement, and thus *Augme* is inapposite. Opening 66-68.

Third, DISH argues that prosecution-history estoppel forecloses equivalence, citing differences between the cancelled original claim 1 and original claim 12. Response 72-73. However, those original claims did not differ based on unique configuration identifiers versus shared configuration identifiers. Appx23026-29. Instead, claim 1 lacked any configuration identifier whatsoever. Appx23026.

Because the applicant never relinquished claims encompassing a shared identifier, estoppel cannot apply.

The court found that the doctrine of equivalents presented a question of fact for the jury. Appx00032-33. The jury properly resolved that question in ClearPlay's favor based on particularized testimony and other evidence.

## IV. DISH'S ALTERNATIVE GROUND FOR AFFIRMANCE ALSO FAILS

As an alternative ground for affirmance, DISH argues that it deletes a navigation object before it completes the accused method. Response 76-81. To make that relevant, DISH asks this Court to construe claim 12 in the first instance. *Id*. But this Court should not construe claims in the first instance. *See MyMail, Ltd. v. ooVoo, LLC*, 934 F.3d 1373, 1380 (Fed. Cir. 2019).

DISH argues claim 12 requires that all elements of the recited navigation object "must exist until the method completes ***with respect to it***." Response 76. By "it" DISH refers to the entire navigation object, rather than the object's individual elements (start position, stop position, filtering action, and configuration identifier). Appx00266-67. DISH argues that "repeated references to 'the particular navigation object' plainly refer back to the same, singular navigation object." Response 77. But DISH improperly seeks to construe claim terms reciting a prior association with the navigation object to instead require that the navigation object ***presently exist***. Moreover, even if those terms required a presently existing navigation object rather

than a prior association (which they do not), DISH also improperly seeks to construe the claim steps to require ***all*** elements of a navigation object. But the claims' steps reference only ***certain*** elements of the navigation object.

**A. <u>DISH Incorrectly Requires Claim Elements To Exist Through All Steps</u>**

DISH argues that "the same navigation object must exist throughout the method," citing *Tuna Processors v. Haw. Int'l Seafood*, 327 F. App'x 204 (Fed. Cir. 2009). But that non-precedential case involved a method claim where each step referenced the previous one. *See id.*, 327 F. App'x at 209. The steps of claim 12 differ, and need not be performed in the listed order.

For example, claim 12 recites "continuously ***monitoring*** the position code to determine whether [it] falls within the ***start and stop positions defined by*** a particular navigation object." But the claims do not specify when or where that "start and stop position" exists during monitoring. This is analogous to a claim term reciting "reading a book authored by Mark Twain." Referencing Mr. Twain does not exclude reading the book after his passing. DISH fails to justify construing the claim to require that the navigation object exist at the time of monitoring. Indeed, even the JMOL observed that the claim does not "require the navigation object to exist at the time of monitoring." Appx00072-73.

Different steps of claim 12 recite different elements from the navigation object. Thus, the claim requires at most that each ***element*** of the navigation object exists until the method completes with respect to ***that element***. The claim does not

require that the entire navigation object exists until the entire method completes, as DISH argues. Any deletion of DISH's "configuration identifier" occurs only after DISH performs the last claim step reciting the "configuration identifier." Appx18647, Appx18354-55. After completing that last "configuration identifier" step, DISH copies the navigation object's other elements to a "descriptor file," which is a "stripped down version" of the announcement file. Appx18355-56. DISH thus preserves and uses the navigation object's elements until after performing all of the method steps reciting them.

### B. Not All Claim Steps Need Be Performed In The Listed Order

Claim 12 recites 8 steps, which involve Setup (steps 1 and 6), Playback (steps 2-5), and Compatibility (steps 7-8). Appx00372. The Setup steps recite "creating an object store which can be loaded into a memory of the consumer computer system…" and "assigning a configuration identifier" to a decoder, respectively. The Playback steps recite decoding content, monitoring a position code during decoding, activating a filtering action to filter content, and transferring content to an output device. *Id.* The Compatibility steps recite comparing a navigation object's configuration identifier against a decoder's configuration identifier and determining that they match. *Id.*

"Although the language of a method claim does not generally require that its steps be undertaken in the listed order, sometimes either logic or grammar mandates

a particular order of steps." *Dionex Softron GmbH v. Agilent Techs., Inc.*, 56 F.4th 1353, 1359 (Fed. Cir. 2023). The Compatibility steps reference a configuration identifier, but the Playback steps do not. Thus, claim 12 does not require that the Playback steps occur before the Compatibility steps. The configuration identifier element need only exist until the Compatibility steps finish, which may be before the Playback steps finish.

### C. Substantial Evidence Showed DISH Performed The Steps As Required By Claim 12

DISH performs all steps necessary to infringe. DISH first performs step 1 (by creating an announcement file object store) and 6 (by assigning the Hopper's configuration identifier). Opening 8; Appx18250-51. DISH then performs the following steps in this order: 7 (comparing the announcement file's configuration identifier to the Hopper's), 8 (determining whether the announcement file applies to the Hopper), 2 (decoding the recording on the Hopper), 3 (monitoring the position code), 4 (activating the commercial skipping filtering action), and 5 (transferring content to an output device). Opening 8-10, 37-39; Appx18561-62. The announcement file includes navigation objects defining a start position, stop position, and filtering action. *Id*.

In step 7, DISH compares the navigation object's configuration identifier in the announcement file with the Hopper decoder's configuration identifier. Appx18566-68. In step 8, DISH determines whether the navigation objects apply to

the Hopper based on the configuration identifiers matching. *Id.* At that point, the configuration identifier in the announcement file has served its purpose in both the claim and in DISH's system. Nothing more is required, as the patent confirms. *See* Appx00356 (Fig. 4A showing "configuration match?" before "decode content" and other steps). Then, DISH's software uses only other elements, consistent with the remaining claim steps. *See* Appx18483-93, Appx18559-60, Appx20618-21.

Thus, substantial evidence supports the jury's finding that DISH infringed claim 12. This Court should not render a construction for the first time on appeal. Regardless, DISH's erroneous claim construction does not provide an alternative ground for affirmance.

## V. CONCLUSION

For the foregoing reasons and those in ClearPlay's Opening Brief, the JMOL should be reversed.

Respectfully submitted,

Dated: November 27, 2024 By: */s/ Joseph R. Re*

Joseph R. Re, *Principal Counsel*
Alan G. Laquer
Jeremiah S. Helm
Rhett D. Ramsey
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, 14th Floor
Irvine, CA 92614
(949) 760-0404

L. Richard Williams
Dennis K. Blackhurst
Abigail M. Terhune
**WILLIAMS BLACKHURST TERHUNE, PLLC**
701 North 44th Ave.
Phoenix, AZ 85008
(480) 429-3003

Michael K. Erickson
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, Suite 1400
Salt Lake City, UT 84111
(801) 532-1500

David J. Jordan
**FOLEY & LARDNER LLP**
95 South State Street, Suite 2500
Salt Lake City, UT 84111
(801) 401-8900

*Attorneys for Appellant,*
*ClearPlay, Inc.*

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF CONFIDENTIAL MATERIAL

**Case Number:** 23-2134

**Short Case Caption:** Clearplay, Inc. v. DISH Network L.L.C

**Instructions:** When computing a confidential word count, Fed. Cir. R. 25.1(d)(1)(C) applies the following exclusions:

- Only count each unique word or number once (repeated uses of the same word do not count more than once).
- For a responsive filing, do not count words marked confidential for the first time in the preceding filing.

The limitations of Fed. Cir. R. 25.1(d)(1) do not apply to appendices; attachments; exhibits; and addenda. *See* Fed. Cir. R. 25.1(d)(1)(D).

The foregoing document contains 4 number of unique words (including numbers) marked confidential.

☐ This number does not exceed the maximum of 15 words permitted by Fed. Cir. R. 25.1(d)(1)(A).

☐ This number does not exceed the maximum of 50 words permitted by Fed. Cir. R. 25.1(d)(1)(B) for cases under 19 U.S.C. § 1516a or 28 U.S.C. § 1491(b).

☐ This number exceeds the maximum permitted by Federal Circuit Rule 25.1(d)(1), and the filing is accompanied by a motion to waive the confidentiality requirements.

Date: 11/27/2024

Signature: /s/ Joseph R. Re

Name: Joseph R. Re

# CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(b). This brief contains 6914 words, excluding the parts of the brief exempt by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b)(2).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point font Times New Roman.

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: November 27, 2024

By: */s/ Joseph R. Re*
Joseph R. Re

*Attorney for Appellant,*
*ClearPlay, Inc.*

60306249